Bob BOBIAN,[1] et al.  Plaintiffs,

v.

CSA CZECH AIRLINES, Defendant

No.  CIV.02–1627(DRD).

United States District Court,
D. New Jersey.

Oct. 30, 2002.

John E. Patton, Esq., Union, Richard F. Schaden, Esq., Bruce A. Lampert, Esq., Daniel Alan Nelson, Esq., Schaden, Katzman, Lampert & McClune, Broomfield, CO, for Plaintiffs, Bill Bobian, et al.

K. Roger Plawker, Esq., Walder, Hayden & Brogan, P.A., Roseland, Allan I. Mendelsohn, Esq., Mendelsohn & O'Keefe, Washington, D.C., Marvin L. Szymkowicz, Bowytz Savit Szymkowicz, LLP; Bethesda, MD, for Defendant, CSA Czech Airlines.

---

1.  The briefs and exhibits submitted in connection with this motion, along with the pleadings originally filed in the Southern District of Texas, reveal that Plaintiff Bobian's full name is actually Bill Bobian.

## OPINION

DEBEVOISE, Senior District Judge.

Plaintiffs assert claims under the Warsaw Convention for injuries allegedly resulting from their experiences as passengers on CSA Czech Airlines ("CSA") Flight 52 on September 16, 1999. CSA moves for summary judgment as to all the claims asserted by 28 of the 29 Plaintiffs on the grounds that these Plaintiffs cannot show that they suffered bodily injury compensable under the Warsaw Convention. As to the remaining Plaintiff, Eugene Townsend, CSA moves on the same grounds for summary judgment as to all claimed injuries except one, a heart attack he claims to have suffered as a result of his experiences on Flight 52.[2] In addition to contesting the merits of the motion, Plaintiffs contend that it is premature. Because CSA's motion calls for facts that are entirely within Plaintiffs' control, and that they have had ample opportunity to develop, it will not be denied or deferred as premature. Because Plaintiffs have not produced any evidence that would reasonably support an inference that they suffered injuries compensable under the Convention, CSA's motion for partial summary judgment will be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs filed this action in September 2001 in the United States District Court for the Southern District of Texas against CSA and Continental Airlines, Inc. ("Continental"), asserting claims under the Warsaw Convention[3] and Texas common law.

By an order entered January 9, 2002, Judge Hoyt of the Southern District of Texas dismissed all the common law claims in the Amended Complaint (the "Complaint"); and on March 28, 2002, he entered summary judgment in favor of co-defendant Continental Airlines, Inc., dismissing it from the suit. Following these dismissals, the only remaining claim in the case is Count I of the Complaint, a claim under the Warsaw Convention for bodily injuries allegedly suffered on Flight 52.

In addition to granting Continental's motion for summary judgment, Judge Hoyt simultaneously granted CSA's motion for a change of venue to the District of New Jersey. Plaintiffs subsequently moved before Magistrate Judge Hedges to transfer the case back to the Southern District of Texas. On July 31, 2002 Judge Hedges denied the motion; and on September 12, 2002, this court affirmed Judge Hedges's order.

The Complaint alleges generally that by flying through severe turbulence associated with hurricane Floyd on September 16, 1999, CSA caused "emotional injuries, physical manifestations of emotional trauma, and other damages and injuries to plaintiffs." The evidentiary support in the record for Plaintiffs' claims of injury comes mainly from their responses to interrogatories, samples and summaries of which have been provided by both sides in connection with the present motion.

For its part CSA has provided, as an exhibit attached to its brief in support of the motion, Plaintiff Jose Guajardo's responses to its first set of interrogatories.

---

**2.** Unless otherwise noted, collective references to Plaintiffs and claims in this opinion will refer to the challenged claims, and exclude Townsend's heart-attack claim.

**3.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014 (1934), note following 49 U.S.C. § 40105. Unless otherwise indicated, subsequent citations to the Convention refer to Articles set forth in the note following 49 U.S.C. § 40105.

CSA contends (in its brief and in its Rule 56.1 statement) that the list of injuries he provides in one of his answers is identical to the list provided by all the other Plaintiffs except Townsend.[4] In relevant part, Guajardo's answer enumerates the following supposed injuries:

> physical assault and battery, pain, suffering, nausea, trauma, distress, anguish, loss of enjoyment of life, anxiety, initial and ongoing fear, and post-traumatic stress disorder, which results in physical injury and damage to brain cells resulting in physical change and atrophy to the hippocampus, a structure of the brain dedicated to processing short-term memory and emotional regulation. This is due to overabundant release of glucocorticoids, as well as excessive release of excitatory neurotransmitters. These releases produce a local excitatory reaction which, either singularly or in combination, physically injures brain cells, in some cases injury [sic] such cells so severely that brain cell death occurs.

CSA also provides Plaintiff Townsend's response to its interrogatories. His list of injuries differs from Guajardo's in only two respects: Townsend asserts that he suffered a heart attack on the aircraft, and he omits nausea from his listing of injuries other than the heart attack.[5]

In response, Plaintiffs take exception to CSA's characterization of their answers and provide "examples" of answers that differ from Guajardo's. They provide (1) Plaintiff Bill Bobian's response, which omits nausea from the enumerated injuries but otherwise tracks Guajardo's, (2) Plaintiff Jacques A. Howard's response, which adds "cold sweats, nightmares" and "lack of concentration" to Guajardo's list of injuries; and (3) Plaintiff Eric Dicesare's response, which in relevant part tracks Guajardo's answers verbatim (but differs from CSA's misquotation of Guajardo's response—by including the reference to nausea that CSA left out).

Plaintiffs do not take issue in any other respect with CSA's characterizations of their responses; nor do they provide responses other than those of Bobian, Howard, and Dicesare. It must accordingly be assumed that their other responses are in relevant part as CSA describes them—resembling either the Guajardo responses or CSA's misquoted version of them. Because, as discussed below, none of the injuries in any of the Plaintiffs' responses provided by either side amounts to a bodily injury under the Warsaw Convention, it is of no consequence that the record does not permit a determination of which Plaintiffs claim to have suffered which harms.

In addition to the responses to interrogatories, Plaintiffs offer an affidavit of Ronald Sommer, an "Aircraft Accident Reconstructionist." Based on an examination of materials including weather reports, radar plots, flight data recorder information, and passenger statements, Sommer states his conclusion that Flight 52 "experienced severe turbulence during the 1–hour period prior to its arrival into Newark." He quotes an FAA definition of severe turbulence as turbulence that causes "large, abrupt changes in altitude and/or attitude"

---

4. CSA misquotes Guajardo's response in its brief, omitting a reference to nausea. It is consequently not entirely clear whether it intends to assert that all Plaintiffs' answers resemble Guajardo's actual response or the response as CSA quotes it.

5. Despite this omission, in answer to another interrogatory, Townsend states that all of the listed injuries are permanent "with the exception of nausea." This answer in fact is repeated in every set of answers that either side has presented, whether or not it lists nausea as an injury.

and "large variations in indicated airspeed," and as a result of which occupants are "forced violently against seat belts." He states generally that severe turbulence has a high probability of causing physical injury to aircraft occupants, and that it will cause passengers "to be abruptly slammed and flailed about within their constraints."

Plaintiffs also provide the affidavit of a psychologist, Dr. Erin Bigler, Ph.D, stating that he has examined nine of the Plaintiffs and that five of those nine satisfied criteria for a diagnosis of post-traumatic stress disorder ("PTSD"), two did not, and two satisfied criteria for "related problems with depression and/or anxiety." [6] Bigler also states generally that PTSD, like other "stress-mediated disorders," causes "biochemical and structural changes" in the brain.

## STANDARD OF REVIEW

Summary judgment will be granted if the record establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

Rule 56(c) imposes a burden on the moving party simply to point out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the burden then shifts to the opposition to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The evidence need not be in a form that would be admissible at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Further, a plaintiff may not simply "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* at 247, 106 S.Ct. 2505. In determining whether there exists a material issue of disputed fact, however, the facts and the inferences to be drawn from the facts are to be viewed in the light most favorable to the nonmoving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986).

In addition to being genuine, the disputed facts must be material, as determined by the substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Debate over extraneous issues will not suffice; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## DISCUSSION

### I. Timing of the Motion

Plaintiffs contend that CSA's motion is premature because they have not had suf-

---

**6.** Because, as discussed below, PTSD is not a compensable injury under the Warsaw Convention, it is of no consequence that Plaintiffs do not identify those among them whom their own expert found do not suffer from PTSD.

ficient time to develop evidence in support of their claims of injury. Accordingly, they argue that the Court should assume, for the purposes of the motion, that Plaintiffs have suffered physical injuries and have PTSD: they contend that at this stage the Court should decide only whether PTSD is a physical injury within the meaning of the Warsaw Convention.[7] Observing that discovery has not concluded and that the deadline for the designation of expert witnesses has not been set, Plaintiffs contend that additional expert evidence would support their claims. They also note that an unredacted version of records from the flight data recorder has not been produced.

Plaintiffs invoke Fed.R.Civ.P. 56(f),which provides

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

As an initial, formal matter, it must be noted that Plaintiffs have submitted no affidavit stating reasons for which they are unable to provide evidence supporting their claims. The Court of Appeals has emphasized the desirability of strict compliance with the Rule's affidavit requirement. *See St. Surin v. Virgin Islands Daily News, Inc.,* 21 F.3d 1309, 1313–14 (3d Cir.1994); and although failure to fulfill the technical requirements of the Rule is not necessarily fatal to a Rule 56(f) request, *see id.,* it has been cited as a consideration supporting a court's decision not to defer consideration of a motion for summary judgment. *See Dowling v. City of Philadelphia,* 855 F.2d 136, 140–41 (3d Cir.1988).

■ More importantly, even setting technical requirements aside, Plaintiffs have not fulfilled the substantive requirements for a successful Rule 56(f) request. Plaintiffs must "identify with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained," *Lunderstadt v. Colafella,* 885 F.2d 66, 71 (3d Cir.1989) (citing *Dowling,* 855 F.2d at 140). As the Rule states, they must persuade the court that they "cannot for reasons stated present by affidavit facts essential to justify [their] opposition." The missing evidence on which Plaintiffs base their argument for delay is very unlikely to provide substantial support for their claims, and the reasons they offer for their failure to obtain it earlier are in any event unpersuasive. Plaintiffs also offer no explanation at all for their failure to obtain other evidence, clearly within their control, that might (if it exists) provide an evidentiary basis for allegations of physical injury.

■ Unjustified delay in developing evidence is a proper consideration supporting the denial of a Rule 56(f) request, *see, e.g., Lunderstadt,* 885 F.2d at 70–72 (3d Cir. 1989); *Dowling,* 855 F.2d at 140–41; and the fact that evidence needed to oppose a motion for summary judgment is within the non-movant's control (or readily obtainable) is also a factor weighing against his or her objection to the motion as premature. *See St. Surin,* 21 F.3d at 1314 (citing *Dowling* 855 F.2d at 140).

Plaintiffs cite the absence of expert evidence (noting for example that Dr. Bigler has not yet examined all the Plaintiffs). But as the discussion of the merits below

---

7. Plaintiffs apparently concede that the status of PTSD is a legal question.

makes clear, PTSD is not a compensable injury under the Warsaw Convention, and no expert recharacterization of emotional injury—or correlation of it with physical manifestations—will permit recovery for such injury under the Convention. Accordingly, it is not clear what the utility of additional expert testimony would be.[8] Further, Plaintiffs offer no persuasive justification for their failure to obtain expert assessments of their injuries sooner. The events on which Plaintiffs base their claims occurred more than three years ago, and the initial Complaint was filed in September of 2001. The motion to dismiss claims against CSA was decided, and Rule 26 disclosures were submitted, in January of this year. At this point Plaintiffs cannot reasonably claim that they have not had the opportunity to develop evidence supporting their claims under the applicable substantive law—or that they have not had notice of the need to do so.[9]

■ Similarly, Plaintiffs provide no justification for their failure to produce non-expert evidence, even more easily obtainable, that actually might substantiate their claims. As the discussion of the merits below makes clear, what Plaintiffs require is evidence indicating that they experienced concrete physical injuries as a direct result of their experiences on Flight 52. Such evidence is unlikely to come from testimony by experts who examine Plain-

tiffs for the first time three years after the alleged accident. It is much more likely to come from specific averments by the Plaintiffs themselves, or perhaps from accounts or records of diagnosis and treatment at a time closer to the events.[10] Their failure to produce (or to justify their failure to produce) such readily available evidence, is another reason that their attack on the timing of CSA's motion must fail.

Because CSA's motion is not premature, the following discussion will address it in its entirety.

## II. The Merits

Under Article 17 of the Warsaw Convention, an air carrier is liable "for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." In *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 534, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991), the Supreme Court held that plaintiffs may not recover under the Convention for purely mental or psychic injuries. In *Terrafranca v. Virgin Atlantic Airways Ltd.*, 151 F.3d 108, 108–11 (3d Cir.1998), the Court of Appeals applied *Floyd* in denying recovery for post-traumatic stress disor-

---

**8.** Plaintiffs' suggestion that flight data recorder information will provide evidence of physical injury is similarly mistaken. While the flight data recorder may show what happened to the plane, it cannot show that any particular passenger sustained any particular injury.

**9.** Contrary to Plaintiffs' suggestion, it is of no moment that the deadline for designation of expert witnesses has not arrived. Plaintiffs' obligation to develop (and, if required present) evidence in support of their claims does not arise from discovery deadlines. It is a separate duty ultimately arising from the mere assertion of their claims.

**10.** CSA notes that Plaintiffs' Rule 26(a) disclosures do not list any physicians among persons likely to have discoverable information. CSA also notes (and Plaintiffs do not dispute) that in response to an interrogatory asking them to identify health care providers who provided treatment or consultation in connection with claimed injuries, none of the Plaintiffs (except Townsend) provided any names: all objected to the interrogatory on the grounds that it called for the disclosure of expert witnesses before the deadline for such disclosure.

der, and it also construed Floyd to bar recovery under the Convention for physical manifestations of emotional injuries. In Terrafranca, the plaintiff alleged that she suffered from post-traumatic stress disorder and from anorexia and weight loss. The court held that such psychic and psychosomatic harms are not bodily injuries for the purposes of the Convention, holding that plaintiffs may recover only for "direct, concrete, bodily injury as opposed to mere manifestation of fear or anxiety." [11] 151 F.3d at 111; see also, In re Air Crash at Little Rock, 291 F.3d at 511–12 (concluding that PTSD is not a bodily injury under the Convention).

Plaintiffs' claims of injury fall into several categories. But none of their claims describes a bodily injury for the purposes of the Convention. First, several of Plaintiffs' claimed injuries are patently and purely emotional [12]—notwithstanding the curious fact that Plaintiffs, in their responses to interrogatories, characterize all their listed injuries as physical, including such manifestly emotional states as "anguish." These injuries are clearly non-compensable under Floyd's construction of Article 17.

Second, Plaintiffs assert that they have experienced what appear to be manifestations of emotional injury—either physical (nausea, cold sweats) or mental (nightmares, lack of concentration). Recovery for such manifestations is explicitly precluded by Terrafranca, 151 F.3d at 111. While it is conceivable that Plaintiffs experienced nausea in the form of motion sickness as a physical result of the turbulence affecting Flight 52, Plaintiffs do not provide any specific facts to support an affirmative conclusion that they did. Accordingly, even assuming that nausea so induced would amount to a "direct, concrete, bodily injury" as Terrafranca requires and not a "mere manifestation of fear or anxiety," 151 F.3d at 111, Plaintiffs have not offered even a specific allegation (much less any support for it) that they experienced nausea as a direct and physical result of turbulence. Apart from the vague statement in Plaintiffs' responses to the effect that their nausea is not "permanent," there is nothing in the record even to indicate when their nausea was experienced.

Third, Plaintiffs claim harms that are not really injuries at all, much less injuries compensable under the Convention. These include "pain" and "suffering" which (assuming Plaintiffs even intend to refer to them as physical phenomena) are best described as a sensations arising from (unspecified) injuries, not as injuries in themselves. The listed injuries also include "assault and battery," which as CSA observes, are causes of action, not harms.

---

**11.** The Convention's bar on claims for emotional harms is generally understood not to extend to emotional harms that flow from bodily injury: the majority view is that once a plaintiff shows a bodily injury for the purposes of the Convention, he or she can recover for emotional harm proximately caused by that injury. See, e.g., In re Air Crash at Little Rock, Ark. on June 1, 1999, 291 F.3d 503, 509–11 (8th Cir.2002) (discussing cases). However, because Plaintiffs have not produced sufficient evidence of any bodily injuries to which they could point as proximate causes of non-physical injuries, they cannot invoke this rule to recover for their asserted emotional harms or for manifestations of those harms.

**12.** These injuries include "trauma, distress, anguish, loss of enjoyment of life, anxiety," and "initial and ongoing fear." (Plaintiffs do not provide any indication that by "trauma" they mean physical as opposed to emotional trauma. Even if they did, such a general assertion—amounting to nothing more than a repetition of their overall claim of physical injury, would be insufficiently specific to survive a motion for summary judgment.)

Plaintiffs also suggest that the mere experience of g forces within an aircraft amounts to bodily injury for the purposes of the Convention. But while such forces may of course cause injury, experiencing them does not in itself constitute bodily injury. Plaintiffs cite no cases (and the Court has found none) supporting the far-reaching proposition that the mere application of physical force amounts to a bodily injury under the Convention; and such a principle would severely undermine *Floyd*'s construction of Article 17, potentially permitting recovery for any emotional or dignitary harm that could be linked to even the slightest physical contact (for example, a hand on the sleeve of a passenger asked to take his seat or leave an aircraft). Nowhere in *Floyd*'s exhaustive examination of the Convention is there any indication that the phrase "bodily injury" (whether or not it might include psychic injury) refers to anything other than the harmful *effects* of an accident upon a passenger.

Finally, in their most emphatic bid to satisfy the Convention's bodily injury requirement, Plaintiffs contend that PTSD is in itself a bodily injury for the purposes of the Convention because it involves damage to the brain. This theory has already been rejected by one Court of Appeals. *See In re Air Crash at Little Rock*, 291 F.3d at 511–12. More importantly for this Court, it is also flatly inconsistent with *Terrafranca*, which already held that PTSD is not bodily injury under the Convention. 151 F.3d at 111.

 Plaintiffs apparently hope that by recharacterizing PTSD in terms of its effects on the brain, they can escape the controlling effect of *Terrafranca*'s rejection of claims for PTSD and other purely emotional injuries. But their argument proves far too much. Given that all human thoughts and emotions are in some fashion connected to brain activity, and therefore at some level "physical," to accept Plaintiffs' argument would be to break down entirely the barrier between emotional and physical harms that the Convention requires us to maintain.[13] The Court of Appeals has already decided that PTSD is not a bodily injury compensable under the Warsaw Convention (and it presumably did so generally cognizant of the physical dimension of our emotional lives). Plaintiffs' recharacterization of the disorder does not provide a basis for distinguishing their claims from those rejected in *Terrafranca*.

### CONCLUSION

For the reasons stated above, Defendant CSA Czech Airlines' motion for partial summary judgment will be granted in all respects; and all Plaintiffs' claims will be dismissed, with the exception of Plaintiff Eugene Townsend's claim that he suffered a heart attack as a result of the events alleged in the Complaint. An appropriate order will be entered.

---

**13.** Dr. Bigler's own affidavit does not apparently limit to PTSD the characterization of emotional harms as brain injuries. Speaking of PTSD and "other trauma-based emotional disorders," he states, "It is now very well understood and accepted ... that stress-me-diated disorders are, in fact, physiological disorders associated with biochemical and structural changes that occur in the brain in response to the emotional trauma and/or psychological stress."