[No. B192865. Second Dist., Div. Four. Mar. 20, 2008.]

JANE DOE, a Minor, etc., Plaintiff and Appellant, v.
UNITED AIR LINES, INC., Defendant and Appellant.

1502

## COUNSEL

Law Offices of Baird A. Brown and Baird A. Brown for Plaintiff and Appellant.

Dwyer, Daly, Brotzen & Bruno, Peter P. Brotzen and Gregory L. Anderson for Defendant and Appellant.

## OPINION

**MANELLA, J.**—In the underlying action, Jane Doe (Doe), a minor, asserted claims against United Air Lines, Inc. (United), arising out of a sexual assault. After granting summary judgment in favor of United, the trial court granted Doe's motion for a new trial on her claims against United. United appealed from the new trial order, and Doe asserted a protective cross-appeal regarding the grant of summary judgment. We reverse the order granting a new trial and affirm the grant of summary judgment.

## FACTUAL AND PROCEDURAL HISTORY

On December 16, 2004, John Doe, acting as Doe's guardian ad litem, filed a complaint on her behalf against United and Richard Samson. The complaint alleged that on August 4, 2003, Samson sexually assaulted and molested Doe while they were passengers on an airliner operated by United, and that United wrongfully failed to protect Doe from Samson. The complaint contained a tort claim against Samson, and claims for negligence and premises liability against United.[1]

---

[1] The action was removed to federal district court in May 2005, and remanded to state court in July 2005.

United sought summary judgment on Doe's claims, contending she could not show that she had suffered bodily injury within the meaning of the treaty known as the "Warsaw Convention," officially entitled Convention for the Unification of Certain Rules Relating to International Transportation by Air, (Oct. 12, 1929, 49 Stat. 3000, T.S. 876 (eff. Oct. 29, 1934) (Warsaw Convention)), which governs international commercial air travel. The trial court granted summary judgment on May 16, 2006, and entered judgment in United's favor on June 2, 2006.

On June 29, 2006, Doe filed a motion for a new trial. She submitted a declaration from Lilli Friedland, a clinical psychologist, who opined that Samson's assault had caused Doe to experience posttraumatic stress disorder (PTSD). On July 26, 2006, the trial court ordered a new trial on the ground that Friedland's declaration constituted "[n]ewly discovered evidence" creating a triable issue of fact whether Doe had suffered bodily injury (Code Civ. Proc., § 657, subd. 4).

## DISCUSSION

United contends the trial court erred in granting Doe's motion for a new trial. We agree. As explained below, the trial court properly granted summary judgment, and erred in ordering a new trial.

### A. *New Trial Motion Following Summary Judgment*

Generally, "[a] defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]" (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) In moving for summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action—for example, that the plaintiff cannot prove element *X*." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 [107 Cal.Rptr.2d 841, 24 P.3d 493], fn. omitted (*Aguilar*).)

An order granting summary judgment is properly challenged by a motion for a new trial. (*Aguilar, supra,* 25 Cal.4th at p. 858.) "This is so, even though, strictly speaking, 'summary judgment . . . is a determination that there shall be no trial at all.' " (*Ibid.,* quoting *Green v. Del-Camp Investments, Inc.* (1961) 193 Cal.App.2d 479, 481 [14 Cal.Rptr. 420].) The new trial

motion may seek reversal of the summary judgment on the ground that there are triable issues of fact. (See *Green v. Del-Camp Investments, Inc., supra,* 193 Cal.App.2d at pp. 482–483.) In addition, the motion may assert that the summary judgment should be reversed because there is "[n]ewly discovered evidence" (Code Civ. Proc., § 657, subd. 4). (*Scott v. Farrar* (1983) 139 Cal.App.3d 462, 467 [188 Cal.Rptr. 823] (*Scott*).)

The determinations underlying the new trial order dictate our standard of review. (*Aguilar, supra,* 25 Cal.4th at p. 859.) To the extent the order relies on the resolution of a question of law, including the existence of triable issues of fact, we examine the matter de novo. (See *Aguilar, supra,* 25 Cal.4th at p. 860; *Green v. Del-Camp Investments, Inc., supra,* 193 Cal.App.2d at pp. 482–483.) To the extent the order relies on the assertion of newly discovered evidence, we examine the order for an abuse of discretion. (See *Scott, supra,* 139 Cal.App.3d at pp. 467–469.)

### B. *Warsaw Convention*

■ The key issues before us concern the requirements for the recovery of damages under the Warsaw Convention. "The Warsaw Convention is a treaty of the United States and as such it preempts local laws in the areas in which it applies. [Citations.] The purpose of the Warsaw Convention is to facilitate international air travel by providing uniform rules for such travel. [Citation.] It provides a limitation of potential liability for international air carriers, and provide[s] rules to facilitate recovery. [Citation.]" (*P. T. Airfast Services, Indonesia v. Superior Court* (1983) 139 Cal.App.3d 162, 166 [188 Cal.Rptr. 628].) The parties do not dispute that the Warsaw Convention provides the exclusive basis for Doe's claims against United.[2]

■ Article 17 of the Warsaw Convention (Article 17), as translated from the original French text, provides: "The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." (Warsaw Convention (eff. Oct. 29, 1934) 49 Stat. 3018.)[3] Thus, an air carrier is liable for

---

[2] Although Doe suggests that a treaty known as the Montreal Convention, officially entitled Convention for International Carriage by Air (Montreal, May 28, 1999, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) (eff. Nov. 4, 2003)) may have superseded the Warsaw Convention, she concedes that the applicable provisions of the Montreal Convention are materially identical to those found in the Warsaw Convention.

[3] This is the American translation of Article 17 used by the United States Senate when it ratified the Warsaw Convention in 1934. (See Warsaw Convention (eff. Oct. 29, 1934) 49 Stat. 3018.)

passenger injury only when "a passenger suffers (1) bodily injury in (2) an accident that occurred while (3) on board, embarking, or disembarking." (*Terrafranca v. Virgin Atlantic Airways, LTD.* (3d Cir. 1998) 151 F.3d 108, 110 (*Terrafranca*).)

 The leading case concerning the interpretation of the term "bodily injury," as used here, is *Eastern Airlines, Inc. v. Floyd* (1991) 499 U.S. 530, 535 [113 L.Ed.2d 569, 111 S.Ct. 1489] (*Floyd*). There, a group of passengers asserted claims against an airline after their airplane suffered engine failure over the Atlantic Ocean and made an emergency landing. (*Id.* at p. 533.) Each passenger sought damages solely for mental distress. (*Ibid.*) Following a careful analysis of the original French text of Article 17, the United States Supreme Court determined that the French term translated as " 'bodily injury' " (" 'lésion corporelle' ") carries "a narrow meaning excluding purely mental injuries," and concluded that "an air carrier cannot be held liable under Article 17 when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of injury." (499 U.S. at pp. 542, 552–553.)

### C. *Newly Discovered Evidence*

In ordering a new trial, the trial court determined that Friedland's declaration constituted newly discovered evidence that Doe had suffered bodily injury. Generally, a party seeking a new trial on this basis must show that "(1) the evidence is newly discovered; (2) he or she exercised reasonable diligence in discovering and producing it; and (3) it is material to the . . . party's case." (*Plancarte v. Guardsmark* (2004) 118 Cal.App.4th 640, 646 [13 Cal.Rptr.3d 315].) If the party's showing is clearly "lacking in essential particulars," the grant of a new trial is an abuse of discretion. (*Slemons v. Paterson* (1939) 14 Cal.2d 612, 615–616 [96 P.2d 125].) As we explain below, Doe established none of the required elements.

### 1. *Underlying Proceedings*

United filed its motion for summary judgment on February 14, 2006. To establish that Doe had not suffered any physical injury as the result of Samson's assault and molestation, United submitted excerpts from Doe's deposition. According to Doe, the misconduct occurred while she was flying to Korea after a visit to the United States. She had played tennis strenuously

before the flight, and her muscles and right hand were strained and painful. After she fell asleep, she felt pain in her right hand, and awoke to find that the man seated next to her was holding her hand on or near his penis.

Doe attributed the pain that awoke her to her strained muscles. When United's counsel examined her about her injuries, the following colloquy occurred:

"Q Aside from the psychiatric or psychological counseling and care that you had, did you sustain any physical injury from anything that happened on board this airplane?

"A No.

"Q Did you have any cuts or bleeding of any kind because of anything that happened on this airplane?

"A No.

"Q Did you have any bruises of any kind because of anything that happened on board this airplane?

"A No. [¶] . . . [¶]

"Q Did you have any injury to either your arm or your hand or any other part of your body as a result of anything that happened on this airplane?

"A No.

"Q Did you have any pain or discomfort in any part of your body, other than the emotional distress and anxiety, as a result of anything that happened on board this airplane?

"A No."

Doe filed her opposition to the motion on April 21, 2006, and filed supplemental evidence on May 9, 2006.[4] Although Doe contended there were triable issues whether Samson's misconduct had injured her physically, none of the evidence she submitted in opposition to summary judgment challenged

---

[4] United objected to Doe's evidentiary showing on numerous grounds, but the trial court did not rule on these objections. Because United did not request rulings on the objections at the hearing on the summary judgment motion, United has forfeited its objections. (Code Civ. Proc., § 437c, subd. (d).)

or contradicted her deposition testimony.[5] At the May 12 hearing on United's motion, Doe's counsel asserted that a psychologist had examined Doe after the filing of her opposition and concluded that Doe suffered from PTSD. Doe's counsel neither explained why he had not submitted a declaration from the psychologist nor requested a continuance in order to do so. The trial court granted the motion for summary judgment, finding that Doe's deposition testimony established that Samson's misconduct had not resulted in any bodily injury to her within the meaning of the Warsaw Convention.

Although Doe's notice of intention to seek a new trial cited several grounds for a new trial, her motion relied solely on the ground of "[n]ewly discovered evidence" (Code Civ. Proc., § 657, subd. 4). Doe tendered a declaration from Friedland, who opined that Samson's misconduct had had "profound effects" on Doe, including PTSD. Friedland further stated: "PTSD has a physical basis which includes alteration in brain chemistry, physiology and the neurologic[al] system." Attached to the declaration was Friedland's report on her examination of Doe, which disclosed that in examining Doe, Friedland had reviewed Doe's medical records, interviewed her, and administered several psychological tests. According to the report, Doe's PTSD involved depression, anxiety, feelings of estrangement from other people, and an inability to manage her emotions.[6] The report also stated that scientific research had tied some of these symptoms to specific changes in the brain and nervous system.

Doe's motion was also supported by a declaration from her counsel, who stated: "I was unaware that [Doe] suffered from [PTSD] or any other specific clinical disorder prior to the expert witness stage of this case. [¶] In April 2006 I retained [Friedland] as an expert witness in this action. In June Dr. Friedland provided me with a report in which she concluded that [Doe] suffers from PTSD as a result of the Richard Samson molestation/assault."

---

[5] Doe attempted to raise a triable issue regarding the existence of physical injury by pointing to Samson's deposition testimony, a statement by a flight attendant, and other portions of her own deposition. Samson testified that during the flight, he unzipped his pants, placed Doe's hand on his underwear, covered her hand with his own, and briefly touched her leg; he also testified that he pleaded guilty to a single charge of sexual misconduct. The flight attendant stated that after she learned that Samson "had done something to Doe," she found Doe to be "in shock, breathing very heavy," and "upset." Finally, in the cited portions of Doe's deposition, she testified that when she awoke, she found Samson's hand fondling her hand, which was on his penis.

[6] The report concluded: "The sexual molestation has had a severe pervasive negative impact on Jane Doe. Ms. Doe suffers from an impaired self-esteem, poor emotional management, inadequate interpersonal competencies, and sense of pessimism. She is estranged from people, suspicious of the motives of others, [and] unable to adequately understand and regulate her emotions, suicidal thoughts, flat affect, and diminished motivation."

The trial court granted the new trial motion, concluding that Friedland's declaration was unavailable at the time of the May hearing on the motion for summary judgment, and that the declaration raised a triable issue whether Doe had suffered bodily injury within the meaning of the Warsaw Convention.

### 2. *Reasonable Diligence in Producing New Evidence*

On this record, Doe did not display reasonable diligence in tendering her "new" evidence. Generally, when a party seeking a new trial knew, or should have known, about the pertinent evidence before trial but did not exercise due diligence in producing it, the grant of a new trial is error. (See *Schultz v. Mathias* (1970) 3 Cal.App.3d 904, 909–910 [83 Cal.Rptr. 888], reversed on another ground in *Scala v. Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 364, fn. 1, 370 [90 Cal.Rptr. 592, 475 P.2d 864].) Nonetheless, as the court explained in *Scott,* a party claiming the discovery of new evidence following summary judgment is held to a less demanding standard of reasonable diligence than a party asserting this claim after trial. (*Scott, supra,* 139 Cal.App.3d at pp. 467–469.) There, the party opposing summary judgment deposed a witness for the first time after the hearing on the summary judgment motion, and sought a new trial on the ground that the witness's testimony constituted newly discovered evidence. (*Ibid.*) When the trial court denied a new trial, the appellate court reversed, reasoning that the testimony was unknown to the moving party prior to the deposition, and the date of the deposition had been set shortly after the inception of the action in the regular course of discovery, which the moving party had pursued with reasonable diligence. (*Id.* at pp. 468–469.)

■ Here, unlike *Scott,* the evidence was neither "newly discovered" nor produced with reasonable diligence. Doe's counsel knew about Friedland's opinion at the hearing on the summary judgment motion, yet he neither submitted a declaration from Friedland nor sought a continuance in order to do so, despite having submitted other evidence three days before the hearing. Moreover, while Doe's counsel stated he did not engage Friedland until April (well after United filed its summary judgment motion), he asserted no facts demonstrating that he was unable to obtain a declaration before the May hearing on United's motion for summary judgment. Nor did he attempt to explain why he failed to seek a continuance in order to present admissible evidence of an opinion of which he was admittedly aware on the date of the summary judgment hearing.[7] The trial court thus erred in determining that Doe had shown elements (1) and (2).

---

[7] Doe's new trial motion asserted that Friedland "was not in a position to state her findings and conclusions until after the summary judgment ruling." This statement, however, is unsupported by the accompanying declarations from Doe's counsel and Friedland, and does not constitute evidence (*Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 843 [251 Cal.Rptr. 530] [an attorney's unsworn representations are not testimony]). Moreover, it

### 3. *Materiality of the Evidence*

We further conclude that Friedland's declaration was not material to the ruling on the motion for summary judgment. The "mainstream view" among federal courts is that *Floyd* does not bar passengers from recovering damages for mental distress caused by physical injuries they sustain in an accident. (*Ehrlich v. American Airlines, Inc.* (2d Cir. 2004) 360 F.3d 366, 375–377, 400; *In re Air Crash at Little Rock Arkansas* (8th Cir. 2002) 291 F.3d 503, 509 (*Air Crash*).) Here, we confront a distinct but related issue: Doe contends that she is entitled to recover for alleged changes to her brain and nervous system tied to PTSD she developed following Samson's assault. As explained above (see pt. C.1., *ante*), Friedland's declaration stated that PTSD "has a physical basis which includes alteration in brain chemistry, physiology and the neurologic[al] system," and her attached report linked some of PTSD's characteristic symptoms with identifiable changes in the brain and nervous system. The key question, therefore, is whether this showing raises a triable issue about the existence of bodily injury within the meaning of the Warsaw Convention.

Following *Floyd*, several courts have addressed the extent to which the physical manifestations and effects of various forms of mental distress—including PTSD—constitute bodily injury for recovery of damages under the Warsaw Convention. In *Jack v. Trans World Airlines, Inc.* (N.D.Cal. 1994) 854 F.Supp. 654, 656 (*Jack*), an airliner experienced an abortive takeoff, crash, and fire. Although no passenger died, the incident traumatized many of the passengers. (*Ibid.*) In the subsequent litigation, the airline sought summary judgment on the claims of the passengers who sought damages for their emotional distress. (*Id.* at pp. 663–664.)

To raise a triable issue regarding bodily injury, the passengers submitted a declaration from a psychiatrist, Martin Blinder, who opined that their mental distress had "intrinsic physical effects." (*Jack, supra*, 854 F.Supp. at p. 664.) The court determined that this declaration did not constitute a showing of bodily injury under *Floyd*: "Dr. Blinder's comments regarding the physiologic[al] component of emotional distress would apply to any near death experience, including that suffered by the plaintiffs in *Floyd*. . . . Thus, under Dr. Blinder's theory, even the *Floyd* plaintiffs would have survived the Supreme Court's *Floyd* ruling. Application of Dr. Blinder's opinion would eviscerate *Floyd*." (*Jack, supra*, 854 F.Supp. at p. 664; see also *Carey v. United Airlines* (9th Cir. 2001) 255 F.3d 1044, 1046, 1052 (*Carey*) [physical manifestations of plaintiff's emotional distress did not constitute bodily injury under the Warsaw Convention].)

---

conflicts with the representations of Doe's counsel at the summary judgment hearing that a psychologist had opined that Doe had PTSD.

In *Terrafranca, supra,* 151 F.3d 108, the Third Circuit addressed directly whether PTSD constituted bodily injury. There, the plaintiff and her family were on an international flight when the pilot learned of a bomb threat. (*Id.* at p. 109.) In accordance with the airline's protocol, the pilot told the passengers of the threat. (*Ibid.*) After the plane landed, it was discovered that the threat was a hoax. (*Ibid.*) The plaintiff sued the airline, alleging that the ordeal had caused her to suffer extreme emotional distress, including PTSD, anorexia, and a loss of desire to socialize, and that she had lost 17 pounds. (*Id.* at pp. 109, 112.)

Pointing to the statement in *Floyd* that recovery under the Warsaw Convention is limited to "death, physical injury, or physical manifestation of injury" (*Floyd, supra,* 499 U.S. at p. 552), the plaintiff contended that her weight loss constituted the requisite "physical manifestation of injury" (*Terrafranca, supra,* 151 F.3d at p. 111). The court rejected this contention, reasoning that *Floyd* limited recovery to "direct, concrete, bodily injury as opposed to mere manifestation of fear or anxiety." (*Id.* at p. 111.) It thus held that the plaintiff could not obtain damages for her PTSD and other "purely psychic injuries," or for her weight loss, which was merely "a physical manifestation of her emotional distress." (*Id.* at p. 112.)

The sole court to reach a contrary conclusion did so in a decision later vacated. (*Weaver v. Delta Airlines, Inc.* (D.Mont. 1999) 56 F.Supp.2d 1190, vacated per stipulation (2002) 211 F.Supp.2d 1252 (*Weaver*).)[8] There, the plaintiff alleged that she had developed PTSD after the plane on which she was a passenger made an emergency landing. (56 F.Supp.2d at p. 1190.) She offered declarations from two doctors, who stated, respectively, that PTSD " 'has a physical basis [that is] secondary to alteration in brain chemistry, physiology, and anatomy,' " and that the emergency landing " 'had physical impacts upon [the plaintiff's] brain and neurologic[al] system.' " (*Id.* at p. 1191.) Finding that the airline had failed to present evidence contradicting the plaintiff's assertion of bodily injury, "i.e., a brain injury," the court granted the plaintiff partial summary judgment on the issue of liability. (*Ibid.*)

Other courts have not followed *Weaver.* In *Air Crash,* the Eighth Circuit reversed a jury verdict in favor of a plaintiff who claimed to have suffered PTSD as a result of a plane crash. (*Air Crash, supra,* 291 F.3d at p. 506.) The plaintiff's evidence had included the testimony of a psychiatrist who opined

---

[8] Because the decision in *Weaver* was vacated pursuant to an agreement by the parties, it is of doubtful precedential value. As the Seventh Circuit has explained, the vacation of an order on this basis "clouds and diminishes the significance of the holding." (*Matter of Memorial Hosp. of Iowa County, Inc.* (7th Cir. 1988) 862 F.2d 1299, 1302.) Nonetheless, *Weaver* is a "cited opinion" available "in a computer-based source of decisional law," and thus is citable under rule 8.1115(c) of the California Rules of Court. We therefore address it.

that the plaintiff "had a physical injury to her brain due to her chronic PTSD," and that her brain was "not functioning normally as evidenced by lack of sleep and concentration, as well as the flashbacks." (*Id.* at p. 507.) The circuit rejected this evidence as proof of bodily injury. Noting that the plaintiff had undergone no tests demonstrating actual physical changes to her brain, the court observed that the only evidence that the plaintiff's brain had undergone a physical change was the doctor's opinion which, in turn, was based on the plaintiff's symptoms of disrupted sleep, reduced concentration and flashbacks. The court concluded that such evidence "was not adequate, as a matter of law, to establish a *physical change* to [the plaintiff's] brain." (*Id.* at pp. 511–512.)

The court reached a similar conclusion in *Bobian v. CSA Czech Airlines* (D.N.J. 2002) 232 F.Supp.2d 319, 320–321 (*Bobian*). There, the plaintiffs asserted that they had suffered emotional distress after the airliner on which they were passengers flew through severe turbulence. When the airline sought summary judgment, some of the plaintiffs submitted a declaration from a psychologist, who opined that they suffered from PTSD, which had caused biochemical and structural changes to their brains. (*Id.* at p. 322.) In concluding that this declaration failed to raise a triable issue regarding bodily injury, the court stated: "Plaintiffs apparently hope that by recharacterizing PTSD in terms of its effects on the brain, they can escape the controlling effect of *Terrafranca*'s rejection of claims for PTSD and other purely emotional injuries. But their argument proves far too much. Given that all human thoughts and emotions are in some fashion connected to brain activity, and therefore at some level 'physical,' to accept [p]laintiffs' argument would be to break down entirely the barrier between emotional and physical harms that the [Warsaw] Convention requires us to maintain."[9] (*Bobian*, at p. 326.)

■ The majority rule, as disclosed by our survey of case authority, is that alterations in an individual's body and behavior intrinsically or characteristically associated with mental distress do not constitute bodily injury under the Warsaw Convention. This rule encompasses alterations or changes in an individual's brain and nervous system characteristically tied to PTSD. At bottom, the rule rests on the recognition that mental distress typically and regularly manifests itself in an individual's brain, nervous system, body, and

---

[9] The extant unpublished authority also departs from *Weaver*. (See *Bobian v. Czech Airlines* (3d Cir., Mar. 29, 2004, No. 03-1262) 2004 WL 628864, at pp. *1–*2 [affirming *Bobian*]; *Alvarez v. American Airlines, Inc.* (S.D.N.Y., Feb. 8, 2000, No. 98 Civ. 1027 (MBM)) 2000 WL 145746, at p. *3 [medical expert's declaration regarding physical basis of PTSD does not establish bodily injury].) While denying recovery for mental distress arguably attributable to PTSD, at least one court has left open the possibility that a sufferer of PTSD might recover under a "brain-lesion theory of PTSD" by providing "individualized proof of such lesions." (*Turturro v. Continental Airlines* (S.D.N.Y. 2001) 128 F.Supp.2d 170, 173–174, 179.) That court found, however, that the plaintiff had failed to make such a showing. (*Id.* at p. 179.)

behavior. Accordingly, absent the rule, plaintiffs who suffer mental distress could avoid *Floyd* merely by pointing to changes in their body that characteristically constitute the physical manifestations of their form of distress. Under this rationale, *Weaver*, which does not comply with the majority rule, is wrongly decided. We find the rationale compelling, and thus follow the majority rule, rather than the vacated decision in *Weaver*.

Here, Friedland did not conduct a physical examination of Doe, and her declaration and report identify only changes in the brain and nervous system that have been generally associated with some symptoms of PTSD. Doe's sole authority for her contention that Friedland's showing raises a triable issue regarding bodily injury is *Weaver*. For the reasons explained above, we reject *Weaver*, and conclude that under the reasoning of *Air Crash* and *Bobian*, the showing was inadequate.[10] The trial court thus erred in determining that the showing was material to the summary judgment motion, and in ordering a new trial on the basis of newly discovered evidence.

## D. *Alternative Ground for the New Trial Order*

■ Doe contends that the new trial order was proper on another ground, namely, that Samson's misconduct, taken by itself, constituted bodily injury under Article 17, even if it did not cause any physical injury.[11] She argues that her claim against United is predicated on a sexual battery by Samson, and thus falls outside the scope of *Floyd* and its progeny, which apply solely to claims for emotional distress "where there has been no physical contact." We disagree. As explained above (see pt. B., *ante*), Article 17 provides the exclusive basis for Doe's claims against United. Because the Warsaw Convention is a treaty, the terms of Article 17, as understood by the signatories of the treaty, establish the essential elements for recovery, including bodily injury. (*Floyd, supra,* 499 U.S. at pp. 535–536.)

---

[10] Moreover, as United notes, Friedland is a licensed clinical psychologist, not a medical doctor, and nothing in her declaration or report suggests she is qualified to conduct medical examinations of patients or determine the specific conditions of their brains. She was thus not competent to opine on any purported physical changes in Doe's brain. (*Salasguevara v. Wyeth Laboratories, Inc.* (1990) 222 Cal.App.3d 379, 386 [271 Cal.Rptr. 780] [doctor's declaration in support of motion for summary judgment was inadequate where doctor lacked "training, experience or skill" qualifying him to opine on issue of medical causation in administration of vaccine].)

[11] With exceptions not relevant here, we may affirm the new trial order "upon any ground stated in the motion, whether or not specified in the order or specification of reasons." (Code. Civ. Proc., § 657, subd. 7.)

■ Nothing in the language of Article 17 suggests that a passenger may recover for physical contact, however offensive, that does not result in *some* bodily injury, which—as the Supreme Court held in *Floyd*—must be understood to include only "death, physical injury, or physical manifestation of injury," and to exclude purely mental injuries (*Floyd, supra,* 499 U.S. at pp. 542, 552). Thus, in *Salis v. Ghana Airways* (N.Y.App.Div. 2004) 9 A.D.3d 421 [780 N.Y.S.2d 627, 628–629], the plaintiff, who alleged that airline employees had twisted his arm when he tried to board an aircraft, sought damages under Article 17 for what he characterized as an "assault." The court concluded that summary judgment had been properly granted with respect to this claim because he had failed to show "an objective identifiable injury to his body." (*Salis,* at p. 629.) Again, in *Morris v. KLM Royal Dutch Airlines* (H.L. 2002) 2 A.C. 628, 646–647, a 15-year-old female passenger on an international flight awoke and discovered a male passenger touching her thigh from the hip to the knee. The Law Lords concluded that her claim under Article 17 failed for want of a showing of physical injury from the touching. (*Morris,* at p. 633.)

■ The cases Doe cites in support of her contention are inapposite. Each case addressed the conditions under which misconduct between passengers may constitute an "accident" for the purpose of establishing an air carrier's liability under Article 17, but contained little or no discussion of the issue before us. In *Wallace v. Korean Air* (2d Cir. 2000) 214 F.3d 293, 295, a female passenger asleep on a flight awoke to find that the male passenger seated next to her had unbuckled her belt, unzipped and unbuttoned her jeans, and placed his hands in her underpants to fondle her. He removed his hands when she turned away, but soon resumed his touching. (*Ibid.*) She struck him and then moved away. (*Ibid.*) Following a careful analysis, the Second Circuit held that the male passenger's misconduct constituted an accident within the meaning of Article 17. (*Wallace,* at pp. 296–301.) In so concluding, it stated: "We express no opinion on any other aspect of [the plaintiff's] Warsaw Convention claim." (*Id.* at p. 300.) Because "an opinion is not authority for an issue not considered therein" (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 243 [45 Cal.Rptr.2d 207, 902 P.2d 225]), *Wallace* provides no support for Doe's contention that Samson's sexual battery, taken by itself, constitutes a cognizable injury under Article 17.

In *Langadinos v. American Airlines, Inc.* (1st Cir. 2000) 199 F.3d 68, 70, the plaintiff's complaint alleged that while he was in an airliner's lavatory, another passenger entered the lavatory and grabbed the plaintiff's

testicles, "causing 'excruciating pain.' " After the district court sustained a demurrer to the complaint, the First Circuit reversed, concluding that the complaint alleged an accident under Article 17. (199 F.3d at pp. 70–74.) In a footnote, the First Circuit remarked that the complaint also adequately pleaded bodily injury in view of the allegation that the plaintiff had suffered excruciating pain in the groin area after the attack. (*Id.* at p. 71, fn. 3.) Here, unlike *Langadinos*, Doe herself attributed the pain she felt while Samson held her hand to her strenuous preflight tennis, and she testified that she had suffered no physical injury as the result of his conduct. Whereas the allegation of pain in *Langadinos* raised the reasonable inference that the battery had injured the plaintiff's groin, Doe's deposition testimony conclusively foreclosed any similar inference from her pain.

Finally, in *Tsevas v. Delta Air Lines, Inc.* (N.D.Ill., Dec. 1, 1997, No. 97C0320) 1997 WL 767278, the plaintiff's complaint alleged that an intoxicated male passenger made unwanted romantic and sexual advances to her, including grabbing her, fondling her, attempting to kiss her, and biting her lip. (*Id.* at p. *1.) The district court concluded that the complaint sufficiently alleged an accident to withstand a demurrer. (*Id.* at pp. *2–*4.) The defendant did not challenge the adequacy of the allegation of bodily injury and the court did not address it. (*Ibid.*) In any event, the allegation of concrete physical injury distinguishes *Tsevas* from the instant case.[12]

█ In addition to these cases, Doe directs our attention to authority regarding the interpretation of the term "bodily injury" in insurance policies and other legal contexts. As the United States Supreme Court explained in *Floyd*, an inquiry into the meaning of the term "bodily injury," as used in Article 17, begins with the original French text of the Warsaw Convention, and is supplemented when necessary by " ' "the history of the treaty, the negotiations, and the practical construction adopted by the parties." ' " (*Floyd*, *supra*, 499 U.S. at pp. 534–535.) The authority relied upon by Doe addresses none of these matters, and thus is irrelevant here. In sum, the trial court erred in ordering a new trial.

---

[12] Doe's reliance on a footnote in *Carey* is similarly unavailing. There, the court merely noted that *Weaver*—which had not yet been vacated—"le[ft] open the possibility that there could be recovery for egregious incidents of intentional misconduct where there is no concrete or visible 'bodily injury . . . .' " (*Carey*, *supra*, 255 F.3d at p. 1053, fn. 47.) *Carey* did not purport to decide the issue and, as noted above, we find *Weaver*'s reasoning unpersuasive.

## DISPOSITION

The order granting a new trial is reversed, and the matter is remanded to the trial court with directions to vacate the new trial order and to enter a new order denying Doe's motion for a new trial. The judgment in United's favor following the grant of summary judgment is affirmed. Each party shall bear its own costs on appeal.

Willhite, Acting P. J., and Suzukawa, J., concurred.

A petition for a rehearing was denied April 8, 2008, and the petition of appellant Jane Doe for review by the Supreme Court was denied July 9, 2008, S163330.