ALLEN v BLOOMFIELD HILLS SCHOOL DISTRICT

Docket No. 275797. Submitted March 12, 2008, at Detroit. Decided
September 23, 2008, at 9:15 a.m. Leave to appeal sought.

Charles and Lisa Allen brought an action in the Oakland Circuit
Court against the Bloomfield Hills School District, invoking the
motor-vehicle exception to governmental immunity from tort
liability to seek damages for noneconomic loss under the no-fault
act, MCL 500.3135, for an alleged brain injury sustained by
Charles Allen (hereafter the plaintiff) and manifested by post-
traumatic stress disorder (PTSD) as a result of a collision between
a train he was operating and a school bus owned by the defendant.
The court, Nanci J. Grant, J., granted summary disposition for the
defendant, ruling that the plaintiffs had not established that the
plaintiff had sustained a bodily injury within the meaning of the
motor-vehicle exception, MCL 691.1405. The plaintiffs appealed.

The Court of Appeals held:

1. Under MCL 691.1405 and MCL 500.3135, a plaintiff must
show both bodily injury and serious impairment of body function
to recover damages.

2. "Bodily injury," as used in MCL 691.1405, simply means a
physical or corporeal injury to the body. The plaintiffs in this case
presented sufficient evidence to create a genuine issue of material
fact concerning whether the plaintiff sustained a bodily injury. One
physician who reviewed a positron emission tomography scan of
the plaintiff's brain stated that the scan depicted decreases in
frontal and subcortical activity consistent with depression and
PTSD and that the abnormalities in the plaintiff's brain are
consistent with an injury to the brain. Another physician stated
that PTSD causes significant changes in brain chemistry, brain
function, and brain structure. The medical evidence was sufficient
to create a genuine issue of material fact such that summary
disposition should not have been granted to the defendant.

Reversed and remanded for further proceedings.

HOEKSTRA, J., concurring in part and dissenting in part, agreed
with the majority that a plaintiff seeking to avoid governmental
immunity and recover third-party no-fault damages from a gov-

ernmental agency must establish "bodily injury" within the meaning of MCL 691.1405. However, he disagreed that the plaintiffs have established that the plaintiff sustained a bodily injury. The plaintiff's PTSD is alleged to have been caused by emotional upset rather than physical impact to his body. Any changes to the plaintiff's brain functions is properly characterized as a mental, emotional, or psychiatric injury rather than a bodily injury. The trial court properly granted summary disposition for the defendant.

1. GOVERNMENTAL IMMUNITY — MOTOR-VEHICLE EXCEPTION — BODILY INJURY — NO-FAULT ACT — SERIOUS IMPAIRMENT OF BODY FUNCTION.

A plaintiff must show both bodily injury, within the meaning of the motor-vehicle exception to governmental immunity from tort liability, and serious impairment of body function, within the meaning of the no-fault act, in order to recover noneconomic damages for injury sustained as a result of the operation of a government-owned motor vehicle (MCL 500.3135, 691.1405).

2. GOVERNMENTAL IMMUNITY — MOTOR-VEHICLE EXCEPTION — BODILY INJURY — BRAIN INJURIES.

A governmental agency is liable for bodily injury or property damage resulting from the negligent operation by an agency employee of an agency-owned motor vehicle; bodily injury is a physical or corporeal injury to the body; the brain is part of the body and it can be injured physically through direct or indirect trauma (MCL 691.1405).

*Pearlman and Pianin* (by *Arvin J. Pearlman* and *Elaine L. Livingway*) for the plaintiffs.

*Clark Hill PLC* (by *Robert A. Lusk* and *Neil H. Goodman*) for the defendant.

Before: SERVITTO, P.J., and HOEKSTRA and MARKEY, JJ.

MARKEY, J. In this suit alleging negligent operation of a governmentally owned and operated school bus, plaintiffs, Charles and Lisa Allen, appeal by right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(7) based on governmental immunity because Charles had not suffered a

"bodily injury." We agree with the trial court that a plaintiff seeking to avoid governmental immunity from tort liability through the motor vehicle exception, MCL 691.1405, must establish a "bodily injury." Here, however, plaintiffs presented objective medical evidence that Charles Allen suffered a brain injury, specifically post traumatic stress disorder as a result of the accident. If believed, we conclude that this evidence would establish a "bodily injury" within the meaning of MCL 691.1405; consequently, the trial court erred in granting defendants summary disposition on this issue. Therefore, we reverse.

I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff Charles Allen (Allen) was operating a train near the intersection of Kensington and Opdyke roads in the city of Bloomfield Hills when he observed a Bloomfield Hills School District (the district) school bus enter the railroad-grade crossing at Opdyke Road and attempt to proceed across the grade by maneuvering around the lowered gate. The train, which was traveling at a speed of approximately 65 miles an hour, was unable to stop and collided with the school bus. After stopping the train and running approximately one-half mile back to the accident scene, Allen was informed that there were no children on the bus at the time of the accident, but that the bus driver was severely injured. Allen was subsequently diagnosed with post traumatic stress disorder (PTSD) stemming from the accident. Allen and his wife filed this suit for recovery of noneconomic and excess economic damages alleging Allen had suffered a serious impairment of body function.[1] MCL 500.3135. But the trial court concluded that Allen did not suffer a "bodily injury" within the meaning of the

---

[1] Plaintiff Lisa Allen also sought damages for loss of consortium.

motor vehicle exception to governmental immunity, MCL 691.1405, and granted defendant summary disposition.

II. ANALYSIS

Plaintiffs argue that the trial court's ruling was erroneous because the clear and unambiguous language of MCL 500.3135 controls this case, rather than the language of the motor vehicle exception to governmental tort immunity, MCL 691.1405. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Davis v Detroit*, 269 Mich App 376, 378; 711 NW2d 462 (2006). MCR 2.116(C)(7) permits summary disposition of a claim that is barred by immunity granted by law. In reviewing a motion under MCR 2.116(C)(7), a court is required to consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. *Horace v City of Pontiac*, 456 Mich 744, 749; 575 NW2d 762 (1998). The contents of the complaint must be accepted as true unless contradicted by the documentary evidence, *Davis, supra* at 378, which must in turn be considered in a light most favorable to the nonmoving party, *Herman v Detroit*, 261 Mich App 141, 143-144; 680 NW2d 71 (2004). The trial court properly grants a motion for summary disposition under MCR 2.116(C)(7) when the undisputed facts establish that the moving party is entitled to immunity granted by law. *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 26; 703 NW2d 822 (2005).

The proper interpretation of statutes is also a question of law reviewed de novo on appeal. *Neal v Wilkes*, 470 Mich 661, 664; 685 NW2d 648 (2004). When interpreting statutory language, courts must ascertain the

legislative intent that may reasonably be inferred from the words in a statute. *Koontz v Ameritech Services, Inc,* 466 Mich 304, 312; 645 NW2d 34 (2002). When the Legislature has unambiguously conveyed its intent, the statute speaks for itself and judicial construction is neither necessary nor permitted. *Id.* Courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute. *Id.* Undefined words in a statute should be accorded their plain and ordinary meanings, and dictionary definitions may be consulted in such situations. *Id.*

A governmental agency is generally immune from tort liability arising out of the exercise or discharge of its governmental functions. MCL 691.1407(1). This would include a public school district's operation of a bus system. *Cobb v Fox,* 113 Mich App 249, 257; 317 NW2d 583 (1982). But the broad immunity afforded by the statute is limited by several narrowly drawn exceptions. *Jackson v Detroit,* 449 Mich 420, 427; 537 NW2d 151 (1995). One of these exceptions, at issue here, is that for motor vehicles: "Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." MCL 691.1405.

Plaintiffs do not dispute, as the statute unequivocally provides, that the exception is limited to "bodily injury" and "property damage." See *Wesche v Mecosta Co Rd Comm,* 480 Mich 75, 84; 746 NW2d 847 (2008). Plaintiffs argue that notwithstanding these limitations, Allen was not required to establish a "bodily injury" to avoid governmental immunity because our Supreme Court determined in *Hardy v Oakland Co,* 461 Mich

561, 565; 607 NW2d 718 (2000), that the limitations on
tort liability in the no-fault act stated in MCL 500.3135
control the broad statement of liability set forth in MCL
691.1405.

The no-fault act provides in part:

(1) A person remains subject to tort liability for noneco-
nomic loss caused by his or her ownership, maintenance, or
use of a motor vehicle only if the injured person has
suffered death, serious impairment of body function, or
permanent serious disfigurement.

* * *

(3) *Notwithstanding any other provision of law,* tort
liability arising from the ownership, maintenance, or use
within this state of a motor vehicle with respect to which
the security required by section 3101 was in effect is
abolished except as to:

* * *

(b) Damages for noneconomic loss as provided and
limited in subsections (1) and (2).

(c) Damages for allowable expenses, work loss, and
survivor's loss as defined in sections 3107 to 3110 in excess
of the daily, monthly, and 3-year limitations contained in
those sections. [MCL 500.3135 (emphasis added).]

In *Hardy, supra* at 562-563, the plaintiff filed suit
against Oakland County for noneconomic damages af-
ter one of the county's sheriff's deputies rear-ended his
car. The plaintiff argued that because he sued the
county under the motor vehicle exception to govern-
mental immunity, he was not obligated to show a
serious impairment of a body function under the no-
fault act. *Id.* at 563. The Court disagreed, reasoning
that the phrase "Notwithstanding any other provision

of law," MCL 500.3135(3),[2] "reflects the Legislature's determination that the restrictions set forth in the no-fault act control the broad statement of liability found in the immunity statute." *Id.* at 565. From this analysis, the Court determined that the plaintiff in *Hardy* was required to show a serious impairment of a body function, the threshold for a tort action for non-economic damages under the no-fault act. *Id.* at 566.

Plaintiffs' reliance on *Hardy* is misplaced. The issue in *Hardy* was not whether the plaintiff had to show "bodily injury" to invoke the motor vehicle exception to governmental immunity stated in MCL 691.1405, but whether he *also* had to satisfy the serious impairment of body function threshold for tort liability under the no-fault act, MCL 500.3135. In holding that the plaintiff did, our Supreme Court did not determine that a plaintiff pursuing a tort remedy for noneconomic damages under the no-fault act need not meet the requirements of MCL 691.1405. Indeed, such a holding would have been tantamount to stating that the Legislature impliedly repealed MCL 691.1405 to the extent that it pertained to such cases. But a repeal by implication may be found only when there exists a clear conflict between two statutes that precludes their harmonious application. *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569, 577; 548 NW2d 900 (1996); *Knauff v Oscoda Co Drain Comm'r*, 240 Mich App 485, 491-492; 618 NW2d 1 (2000). The plain language of MCL 691.1405 and MCL 500.3135 may be read harmoniously to provide that a plaintiff may avoid governmental immunity if he suffers "bodily injury" under the motor vehicle exception of MCL 691.1405, but he must also satisfy the

---

[2] As stated in *Hardy, supra* at 565 n 10, this phrase was formerly contained in MCL 500.3135(2), but is now contained in MCL 500.3135(3) pursuant to 1995 PA 222.

no-fault act threshold for bringing a third-party tort claim, i.e., a plaintiff must establish a serious impairment of a body function as stated in MCL 500.3135. Thus, we must reject plaintiffs' argument that Allen was not required to show a "bodily injury" within the meaning of MCL 691.1405 for the motor vehicle exception to governmental immunity to apply to his tort claim against the district.

The question remains whether plaintiff met his burden of showing a "bodily injury" within the meaning of MCL 691.1405. Because the statute does not define the term "bodily injury," we resort to dictionary definitions and accord the term its plain and ordinary meaning. *Koontz, supra* at 312. *Random House Webster's College Dictionary* (2001) defines "bodily" as "of or pertaining to the body" and "corporeal or material, as contrasted with spiritual or mental." It defines "injury" as "harm or damage done or sustained, esp. bodily harm." Black's Law Dictionary (7th ed), p 789, also defines "bodily injury" as "[p]hysical damage to a person's body." Our Supreme Court in *Wesche, supra* at 84-85, applied a similar analysis to the words "bodily injury" in MCL 691.1405. The Court held that " 'bodily injury' simply means a physical or corporeal injury to the body." *Wesche, supra* at 85. Consequently, the Court held that "because loss of consortium is a nonphysical injury, it does not fall within the categories of damage for which the motor-vehicle exception waives immunity." *Id.*

Plaintiff argues that he suffered a "bodily injury" because the accident caused physical damage to his body as evidenced by a positron emission tomography (PET) scan of his brain. He relies on the affidavit of Dr. Joseph C. Wu, who reviewed plaintiff's PET scan and opined that it depicted "decreases in frontal and subcortical activity consistent with depression and post

traumatic stress disorder." Dr. Wu further opined that "the abnormalities in Mr. Allen's brain as depicted on the September 8, 2006, PET scan are quite pronounced and are clearly different in brain pattern from any of the normal controls. They are also consistent with an injury to Mr. Allen's brain." Dr. Wu related the abnormalities to the January 13, 2004, accident. Plaintiff also relies on the report of Dr. Gerald A. Shiener, who opined that PTSD "causes significant changes in brain chemistry, brain function, and brain structure."

The brain is a part of the human body, so "harm or damage done or sustained" is injury to the brain and within the common meaning of "bodily injury" in MCL 691.1405, as elucidated in *Wesche*. The question on appeal then becomes, for purposes of reviewing the trial court's grant of summary disposition to defendant, whether plaintiff produced sufficient evidence to create a material question of fact that he suffered a "bodily injury" as so defined. In doing so, we must still adhere to the court rules and follow the law. We must review any evidence of a claimed "bodily injury" in a light most favorable to the nonmoving party. Also, we must conduct our review with common sense, and with cognizance of modern medical science and the human body. Here, plaintiff presented objective medical evidence that a mental or emotional trauma can indeed result in physical changes to the brain.

Although the brain is the organ responsible for our thoughts and emotions, it is also the organ that controls all our physical functions. The fact that it serves more than one function hardly detracts from the fact that it is one of our major organs. It can be injured. It can be injured directly and indirectly. It can be injured by direct and indirect trauma. What matters for a legal analysis is the existence of a manifest, objectively

measured injury to the brain. Consequently, to survive a motion for summary disposition, we must determine whether plaintiff produced sufficient evidence that Allen suffered from an objectively manifested physical injury to his brain.

Plaintiff Allen underwent a PET scan of his brain. When Dr. Wu reviewed plaintiff's PET scan, he concluded that it demonstrated "decreases in frontal and subcortical activity consistent with depression and post traumatic stress disorder" and that "the abnormalities in . . . Allen's brain as depicted on the . . . PET scan *are quite pronounced and are clearly different in brain pattern from any of the normal controls. They are also consistent with an injury to Mr. Allen's brain.*" (Emphasis added.) Plaintiff's other expert doctor, Dr. Shiener, essentially corroborated Dr. Wu's conclusion and indicated that PTSD "causes significant changes in brain chemistry, brain function and brain structure. The brain becomes 'rewired' to overrespond to circumstances that are similar to the traumatic experience." So, two separate medical doctors provided evidence that Allen suffered an injury to his brain.

We must view this evidence in the light most favorable to the nonmoving party to assess whether reasonable minds could not differ. It is evident that with this proffered evidence reasonable minds could most certainly differ about whether plaintiff suffered a "bodily injury." We therefore conclude that this evidence is adequate, at least, to preclude summary disposition because there exists a genuine issue of material fact. In the instant case, Dr. Wu's affidavit testimony along with Dr. Shiener's report was sufficient to create a genuine issue of material fact regarding whether plaintiff suffered a "bodily injury."

We find unpersuasive the dissent's reliance on the rationale of *Bobian v CSA Czech Airlines*, 232 F Supp

2d 319 (D NJ, 2002), that because all thoughts and emotions are connected to brain activity, accepting plaintiff's injury as a "bodily injury" would require completely breaking down the barrier between emotional and physical harms. First of all, the *Bobian* court did not interpret our Michigan statute; it analyzed the term "bodily injury" with respect to air carrier liability under Article 17 of the Warsaw Convention. Moreover, lower federal court decisions are not binding precedent in this Court. *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 716; 742 NW2d 399 (2007). But just as important, we find the analysis in *Bobian* profoundly superficial and contrived.

The Legislature has not defined the words "bodily injury" as used in MCL 691.1405. That is why this Court and our Supreme Court in *Wesche* looked to dictionary definitions for guidance in ascertaining their plain and ordinary meanings. And, unless one reads into both the ruling in *Wesche* and the term "bodily injury" in the statute the requirement that an injury ensue solely from *direct* trauma, the dissent significantly alters the definition of "bodily injury" in a manner inconsistent with both the plain wording of the statute and our Supreme Court's interpretation of that term in *Wesche*.

We also note that the dissent appears to concede that indeed plaintiff has an objectively verified brain injury. Its problem seems to be that plaintiff suffered no direct blow to the head, as the cause of the brain injury. Ironically, just a few years ago, the courts in this state had a difficult time understanding and accepting what is now also a universally recognized medical phenomenon and one suffered by thousands of our soldiers: closed head injuries. As we on the bench struggled with how long or whether one had to be rendered uncon-

scious or what tests were sufficient to demonstrate the nature and severity of a closed head injury—including whether MRIs were legally cognizable evidence—the medical community was already a long way down the road in developing treatments and strategies for coping with these mere "mental, emotional," or "psychiatric" injuries. But as a matter of medicine and law, there should be no difference medically or legally between an *objectively* demonstrated brain injury, whether the medical diagnosis is a closed head injury, PTSD, Alzheimer's, brain tumor, epilepsy, etc. A brain injury is a "bodily injury." If there were adequate evidence of a brain injury to meet the requisite evidentiary standards, i.e., objective medical proof of the injury, summary disposition was improper.

In sum, plaintiff here presented sufficient objective medical evidence to raise a material question of fact regarding whether he suffered a brain injury from the accident and whether such brain injury is an injury to the body. Consequently, the trial court erred by granting defendants summary disposition on this issue.

We reverse and remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

SERVITTO, P.J., concurred.

HOEKSTRA, J. *(concurring in part and dissenting in part).* I agree with the majority's conclusion that a plaintiff seeking to avoid governmental immunity and recover third-party no-fault damages from a governmental agency must establish a "bodily injury" within the meaning of MCL 691.1405. However, I disagree that post traumatic stress disorder (PTSD) can be such an injury.

In *Wesche v Mecosta Co Rd Comm*, 480 Mich 75, 84-85; 746 NW2d 847 (2008), the Supreme Court addressed the definition of "bodily injury":

> Although the GTLA [governmental tort liability act] does not define "bodily injury," the term is not difficult to understand. When considering the meaning of a nonlegal word or phrase that is not defined in a statute, resort to a lay dictionary is appropriate. *Horace v City of Pontiac*, 456 Mich 744, 756; 575 NW2d 762 (1998). The word "bodily" means "of or pertaining to the body" or "corporeal or material, as contrasted with spiritual or mental." *Random House Webster's College Dictionary* (2000). The word "injury" refers to "harm or damage done or sustained, [especially] bodily harm." *Id.* Thus, "bodily injury" simply means a physical or corporeal injury to the body.

Plaintiffs argue that plaintiff Charles Allen suffered a "bodily injury" because the accident caused physical damage to his body, as evidenced by a positron emission tomography (PET) scan of his brain. In making this argument, plaintiffs rely on the affidavit of Joseph Wu, M.D., who reviewed Allen's PET scan and opined that it depicted "decreases in frontal and subcortical activity consistent with depression and post traumatic stress disorder." Wu further opined that "the abnormalities in . . . Allen's brain as depicted on the . . . PET scan are quite pronounced and are clearly different in brain pattern from any of the normal controls. They are also consistent with an injury to Mr. Allen's brain." Wu related the abnormalities to the train-bus accident. Plaintiffs also rely on the report of Gerald Shiener, M.D., who opined that PTSD "causes significant changes in brain chemistry, brain function, and brain structure." Allen's PTSD is alleged to have been caused by the emotional upset resulting from his belief, as the accident was occurring, that his operation of the train

was "about to maim or kill numerous school children," rather than a physical impact on his body during the collision.

In my opinion, plaintiffs' evidence concerning Allen's brain abnormalities does not satisfy the definition of "bodily injury" discussed above. Rather, plaintiffs' evidence demonstrates, at most, mental or psychiatric abnormalities or changes. Although not binding on this Court, I find persuasive the analysis in *Bobian v CSA Czech Airlines*, 232 F Supp 2d 319 (D NJ, 2002), regarding whether PTSD constitutes a "bodily injury" compensable under Article 17 of the Warsaw Convention. There, in addressing the plaintiffs' claim that PTSD constitutes a bodily injury by virtue of the physical effects of PTSD on the brain, the court stated, "Given that all human thoughts and emotions are in some fashion connected to brain activity, and therefore at some level 'physical,' to accept Plaintiffs' argument would be to break down entirely the barrier between emotional and physical harms . . . ." *Id.* at 326. Following this reasoning, any change to Allen's brain functions resulting from the accident is properly characterized as a mental, emotional, or psychiatric injury rather than a bodily injury. Because the term "bodily injury" in MCL 691.1405 does not encompass these types of changes, defendant was immune from suit, including Allen's claim for economic damages and plaintiff Lisa Allen's claim for loss of consortium. As such, I would hold the trial court properly granted summary disposition for defendant.