# STATE OF MICHIGAN

# COURT OF APPEALS

---

ALI A. EL-KHALIL,

Plaintiff-Appellant,

v

OAKWOOD HEALTH CARE INC., OAKWOOD
HOSPITAL SOUTHSHORE, OAKWOOD
HOSPITAL DEARBORN, DR. RODERICK
BOYES, M.D., and DR. IQBAL NASIR, M.D.,

Defendants-Appellees.

UNPUBLISHED
April 4, 2017

No. 329986
Wayne Circuit Court
LC No. 15-008259-CK

---

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants and dismissing plaintiff's complaint. We affirm.

Plaintiff, a podiatrist, began employment with defendant Oakwood Hospital Dearborn as a staff physician on May 27, 2008. He ended his staff employment in June 2011, at which time he entered into contracts, in the form of bylaws of medical staff, with the defendant medical facilities as an independent physician, obtaining staff privileges at Oakwood Annapolis Hospital, Oakwood Heritage Hospital, Oakwood Hospital and Medical Center, and Southshore Medical Hospital. Every year plaintiff, like all other independent physicians, was required to request reappointment and be re-credentialed for the following year. Plaintiff worked without incident, obtaining reappointments and being re-credentialed over the next few years, building his practice.

In 2014, plaintiff allegedly obtained information about certain physicians at Oakwood Hospital and Medical Center engaging in illegal activities (healthcare fraud and professional negligence). According to plaintiff, when he confronted them and reported the actions to proper authorities, defendants retaliated against him by initiating an administrative agency proceeding against him which resulted in plaintiff having to take anger management classes. In August 2014, plaintiff initiated legal action against the defendants for violation of the civil rights act (race discrimination) and for tortious interference with an advantageous business relationship, based upon the allegations that defendants had made against him and which had resulted in the

-1-

administrative agency proceeding. These claims were dismissed on defendants' summary disposition motion, the trial court having found that defendants were statutorily immune from liability and that plaintiff failed to state a discrimination claim under the civil rights act. Plaintiff filed a delayed application for leave to appeal that decision with this Court, which we denied.[1]

Plaintiff filed the instant action in June 2015, asserting that since the time he initially sued defendants, they have continued to engage in actions attempting to prevent plaintiff from practicing at Oakwood Dearborn and Oakwood Southshore. According to plaintiff, he in fact received correspondence from the Chiefs of Staff of those facilities, defendants Boyes and Nasir, indicating that his staff privileges at those locations would expire in June 2015 even though his privileges were not set to expire until November 2015. The correspondence further indicated that the medical executive committees of the facilities had recommended that plaintiff not be reappointed to the medical staffs. Plaintiff thus asserted claims of breach of contract and retaliation in violation of the civil rights act.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(7) and (8). They argued that plaintiff's staff privileges were set to expire in June 2015 and that the executive committee decided not to renew his privileges such that there was no breach of contract. Defendants additionally argued that there was no breach of contract because the bylaws signed by plaintiff and defendants did not constitute a contract, that the breach of contract claim was barred by release and that defendants were entitled to qualified immunity. As to the civil rights claim, defendants asserted that plaintiff failed to set forth a prima facie case of retaliation and, because there is a statutory ban on disclosure of peer review information, plaintiff could not obtain discovery to support his claim. The trial court granted defendants' motion. The trial court found that the bylaws were an enforceable contract but that the documents submitted by the parties indicate that plaintiff's most recent appointment term was set to expire on June 25, 2015, not in November 2015 as plaintiff claims. Thus, defendants did not terminate plaintiff's appointment term. The trial court further found that defendants' failure to renew plaintiff's appointment was not a breach of contract, as the allegations relied upon by defendants in making their decision relate directly to plaintiff's ability to provide efficient and quality care and plaintiff provided no evidence that the peer review was a sham. The trial court further found that plaintiff released defendants from liability under the bylaws because plaintiff offered no support for his allegations of malice and bad faith. The trial court found that defendants followed the guidelines set forth in the bylaws and were entitled to qualified immunity under the Health Care Quality Improvement Act and the Michigan Peer Review Immunity Statute. Finally, the trial court found that plaintiff failed to state a claim for retaliation in that, essentially, plaintiff failed to establish any causal connection between his protected activity and an adverse employment action. Plaintiff now appeals.

---

[1] *El-Khalil v Oakwood Health Care Systems, Inc.*, unpublished Order of the Court of Appeals, entered January 8, 2016 (Docket No. 328569).

Plaintiff asserts that he stated a claim for unlawful retaliation under the Elliott Larsen Civil Rights Act and the trial court improperly granted summary disposition in defendants' favor on this issue. We disagree.

We review de novo a trial court's summary disposition ruling. *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). A court may grant summary disposition under MCR 2.116(C)(8) if "[t]he opposing party has failed to state a claim on which relief can be granted." A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings. *Dalley v Dykema Gossett*, 287 Mich App 296, 304; 788 NW2d 679 (2010).

We note that both parties attached exhibits to their pleadings concerning this motion. It appears that the trial court considered this documentary evidence that was outside of the pleadings and that it thus also considered defendants' motion under MCR 2.116(C)(10). A motion for summary disposition premised upon MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Bernardoni v City of Saginaw*, 499 Mich 470, 472–73; 886 NW2d 109 (2016). The court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion to determine whether a question of material fact exists to warrant a trial. *Id*.

Under the Elliott Larsen Civil Rights Act (ELCRA):

Two or more persons shall not conspire to, or a person shall not:

(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.2701]

"To establish a prima facie case of unlawful retaliation under the Civil Rights Act, a plaintiff must show (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Rymal v Baergen*, 262 Mich App 274, 300; 686 NW2d 241 (2004).

In some discrimination cases, the plaintiff is able to produce direct evidence of racial bias. "Direct evidence" is defined as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). Where direct evidence exists, a plaintiff may proceed and prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case. *Id*. Rarely, however, will an employer openly admit having undertaken an adverse employment action in retaliation for an employee engaging in a protected activity. In these cases, the employee generally must rely on circumstantial evidence. When a plaintiff presents circumstantial rather than direct evidence of an employer's retaliatory motive, we

examine the claim under the *McDonnell Douglas*[2] burden-shifting framework. *Cuddington v United Health Services, Inc*, 298 Mich App 264, 276; 826 NW2d 519 (2012). The *McDonnell Douglas* approach allows a plaintiff "to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination." *Hazle*, 464 Mich at 462, quoting *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 537-538; 620 NW2d 836 (2001). As explained in *Hazle*:

> [O]nce a plaintiff establishes a prima facie case of discrimination, the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case. The articulation requirement means that the defendant has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason. "Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." If the employer makes such an articulation, the presumption created by the *McDonnell Douglas* prima facie case drops away.
>
> At that point, in order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." [A] plaintiff "must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful] discrimination." [Id. at 464-466, internal citations omitted]

There appears to be no dispute that plaintiff relies on indirect, or circumstantial evidence to establish his case of retaliation. In this case, the trial court found that plaintiff engaged in a protected activity by filing a discrimination case against defendants in 2014. We agree that this was a protected activity. Contrary to what defendants argue, MCL 32.2701 does not require that the 2014 lawsuit was successful, or even meritorious. Instead, MCL 32.2701 prohibits retaliation simply if a person has, among other things, "filed a complaint" under the civil rights act. Plaintiff's act of filing the 2014 complaint against defendants alleging violations of the civil rights act was thus a protected activity. Defendants clearly knew of this activity because they were called upon to defend against the lawsuit and did, in fact defend against it. The remaining two steps plaintiff must establish in his prima facie case are that defendants took an adverse employment action and that this adverse action was causally related to his filing of the 2014 lawsuit.

In *Pena v Ingham Co Rd Com'n*, 255 Mich App 299, 312; 660 NW2d 351 (2003), this Court stated, "[a]lthough there is no exhaustive list of adverse employment actions, typically it takes the form of an ultimate employment decision, such as a termination in employment, a

---

[2] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." (quotations omitted). Because plaintiff was denied a renewal of the hospital privileges he had enjoyed for many years, albeit subject to a yearly renewal and re-credential process, we are satisfied that this was an adverse employment action.[3]

With respect to a causal connection, plaintiff has alleged that the failure to renew came only after and because of his 2014 lawsuit. However, in order to show causation in a retaliatory discrimination case, "[p]laintiff must show something more than merely a coincidence in time between protected activity and adverse employment action." *Garg v Macomb Co Cmty Mental Health Services*, 472 Mich 263, 286; 696 NW2d 646 (2005), opinion amended on denial of reh (July 18, 2005). In his complaint, plaintiff alleged that no adverse actions had been taken against him until after the 2014 lawsuit. Attached to his complaint, however, were emails from three doctors who practiced with plaintiff (ranging in date from February 2015 through March 2015) asserting that plaintiff had threatened them and that they do not feel safe in the hospital around him. Plaintiff also attached his response to the emails, wherein he stated that the allegations were false and otherwise attempted to discredit the statements. Thus, plaintiff has provided nothing but temporal proximity between the adverse employment action and his protected activity. Had he provided a causal connection between the two, and established a prima facie case of retaliation, under the burden shifting approach in *McDonnell Douglas* "defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *Hazle*, 464 Mich at 464.

Defendants here provided evidence that other doctors complained about plaintiff harassing, threatening, and intimidating them and creating an atmosphere that made them feel unsafe. This is a legitimate, nondiscriminatory reason to not renew plaintiff's hospital privileges. Thus, the burden shifts back to plaintiff to provide evidence "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Id*. at 465-466. Plaintiff has provided no evidence to show that retaliation was a motivating factor in not renewing his hospital privileges. He relies solely on his letter explaining that the allegations by the three doctors were false. Having failed to support his position, summary disposition of plaintiff's retaliation claim was appropriate under MCR 2.116(C)(10).

Given that plaintiff's breach of contract claim was initially premised upon his staff privileges expiring sometime after June 2015 and plaintiff no longer claims that he was entitled to staff privileges after that time, we need not consider plaintiff's breach of contract claim premised upon the time that staff privileges were not renewed. To the extent that plaintiff asserts that defendants breached the Bylaws by denying him a renewal of staff privileges for reasons

---

[3] Although plaintiff initially claimed that defendants "suspended" his hospital privileges and that his privileges were not set to expire until November 2015, plaintiff does not dispute the expiration date of June 2015 on appeal.

other than those related to the efficient delivery of quality patient care and to professional ability and judgment, plaintiff points only to his exemplary record as a doctor in support of his claim. That is not, however, enough.

In *Wieters v Roper Hosp, Inc*, 58 Fed Appx 40 (CA 4 2003), the plaintiff was a surgeon who had his staff privileges at a hospital suspended for what the hospital termed his "disruptive behavior." The surgeon did not deny that he frequently expressed his dissatisfaction with the care that the hospital provided its patients in an angry and disruptive manner. *Id*. at 41. The surgeon sued the hospital and the trial court granted summary disposition to the hospital. On appeal, the surgeon argued that "the action was taken not in the reasonable belief that it would further quality care, but to halt his complaints about the declining standards of care at the hospital." *Id* at 45. The hospital provided the affidavit of its president of medical staff, who noted that the surgeon had engaged "in seventeen instances of disruptive conduct, but gives no specifics." The affidavit generally described the surgeon as erupting in rage and unprofessional behavior. The Fourth Circuit concluded, "[i]t is not difficult to see that the hospital would be justified in the belief that this conduct was detrimental to the quality of the health care it provided." Thus, while a doctor's treatment of his patients may be exemplary, how he or she interacts with staff may, in fact, serve as the basis for a reasonable belief that the quality of health care is being affected.

Defendants here provided complaints made by doctors about plaintiff and the affidavit of the administrative director of medical affairs for Oakwood Healthcare wherein she swore that the Dearborn medical executive committee (MEC) is comprised of 21 physicians who voted in June 2015 to not renew plaintiff's hospital privileges. She swore that the MEC had information before it concerning numerous complaints about plaintiff's behavior. She also swore that the Southshore and Wayne MEC's thereafter met and also voted to not renew his privileges. Plaintiff has provided no evidence to contradict that provided by defendants and has thus not established a material question of fact concerning whether defendants breached the Bylaw relied upon and cited by plaintiff. Summary disposition on plaintiff's breach of contract claim was thus appropriate.

Because we have determined that dismissal of both plaintiff's retaliation and breach of contract claims was appropriate, we need not consider plaintiff's remaining claims on appeal.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro