# STATE OF MICHIGAN

# COURT OF APPEALS

LANCE CRAIG EICHLER,

      Plaintiff-Appellant,

v

CAROL MAXINE SACKETT,

      Defendant-Appellee.

UNPUBLISHED
October 9, 2018

No. 342041
Berrien Circuit Court
LC No. 17-000115-NI

Before: BOONSTRA, P.J., and O'CONNELL and TUKEL, JJ.

PER CURIAM.

Plaintiff, Lance Craig Eichler, appeals as of right the trial court's order granting defendant Carol Maxine Sackett's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). The trial court ruled that Eichler had not demonstrated serious impairment of a body function, as required to proceed on a tort claim against Sackett. We affirm.

## I. BACKGROUND

Eichler was injured in a car accident in February 2017 when Sackett sideswiped Eichler's motorcycle while making a left turn. Eichler went to the hospital the morning after the accident because of pain in his right knee. Eichler was diagnosed with a small fracture below his right knee. Dr. Joseph Farber, an orthopedic surgeon, instructed Eichler to wear a knee brace and not to engage in weight-bearing activity. Medical imaging taken the following day showed that Eichler had preexisting arthritis in his right knee. At a follow-up appointment about one month later, Eichler continued to feel pain in his right knee, but the pain lessened when he wore the knee brace. Dr. Farber allowed Eichler to start light weight-bearing activity. At the next appointment one month later, Eichler said his knee felt fine when he wore the brace but sore without it. Eichler's range of motion in his right knee remained restricted because of the pain. An x-ray showed that the fracture had nearly healed but that Eichler had "significant degenerative changes" in the knee. Eichler could continue to wear the brace to relieve pain, but Dr. Farber lifted all restrictions on Eichler's activities. At the final appointment three months later, Dr. Farber noted that the arthritis in Eichler's knee had increased significantly in the past few months. Eichler had preexisting arthritis, but Dr. Farber believed that the injury had partly accelerated the presentation of arthritis, although Dr. Farber could not quantify the difference.

-1-

Eichler brought a tort claim against Sackett under the no-fault insurance act, MCL 500.3101 *et seq*. Sackett moved for summary disposition, arguing that Eichler had not demonstrated that his injury constituted serious impairment of a body function as required by MCL 500.3135(1). The trial court agreed and granted Sackett's motion. Eichler now appeals.

## II. DISCUSSION

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "[O]nce a party makes a properly supported motion under MCR 2.116, the adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, *set forth specific facts* showing that there is a genuine issue for trial." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 377; 775 NW2d 618 (2009) (quotation marks and citation omitted).

Eichler argues that he suffered serious impairment of body function because the injury to his right knee affected his ability to lead a normal life. We disagree. "A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). " '[S]erious impairment of body function' means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). To establish a serious impairment of body function, a plaintiff must show "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010). In this case, the parties dispute only the third prong.

To determine "the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *Id*. at 202. The trial court should take into account three considerations when making this comparison. *Id*. First, a plaintiff is only required to show that "his or her normal life need has been *affected*, not destroyed." *Id*. Second, the pertinent inquiry is whether the plaintiff's "*ability* to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected." *Id*. Third, the plaintiff is not required to show that the impairment lasted a certain amount of time to show that it affected his or her ability to live a normal life. *Id*. In *McCormick*, the plaintiff showed that his broken ankle affected his general ability to lead a normal life because he was unable to work for 14 months and did not return to work for 19 months, compared to the 60 hours per week he worked before the injury. *Id*. at 218-219. Whether the injured party has suffered serious impairment of body function is a legal question if "[t]here is no factual dispute concerning the nature and extent of the person's injuries[,]" or if such a factual dispute "is not material to the determination whether the person has suffered a serious impairment of body function . . . ." MCL 500.3135(2).

In this case, the trial court correctly determined that Eichler's injury did not affect his ability to lead a normal life. First, Eichler did not show that his injury had a measurable impact on his employment. Before the accident, Eichler worked as an audio engineer, which involved heavy lifting. He worked for AudioBahn sporadically in 2016, a total of 13 times between January 2016 and September 2016, and earned roughly $10,000 in that time. Eichler worked for AudioBahn as an on-call contractor, and he did not work regular hours. In addition, the record contains no evidence of how long Eichler worked at AudioBahn after September 2016 until the accident in February 2017. Eichler also worked at Mickey's Pub two or three days per week before the accident. He returned to work at Mickey's Pub five days after the accident, and he worked there one or two days per week until April 2017. Although Eichler claimed that he was not able to perform the same type of work because he still could not lift heavy equipment, he was clearly able to work in some capacity. In late April 2017, Dr. Farber lifted all restrictions, but Eichler apparently stopped working then. Eichler was able to work after the accident, and his decision to stop working two months later did not show that the knee injury was responsible for this decision. Eichler further claimed that he was unable to engage in certain hobbies, such as driving his motorcycle and kayaking. Dr. Farber testified that he would not restrict plaintiff with respect to these specific activities, however. For these reasons, Eichler failed to establish that his knee injury affected his general ability to lead a normal life. Therefore, the trial court properly granted Sackett's motion for summary disposition.

We affirm.

/s/ Mark T. Boonstra
/s/ Peter D. O'Connell
/s/ Jonathan Tukel

-3-