*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BARRY LATARTE and MARY HELEN
LATARTE,

UNPUBLISHED
June 3, 2021

Plaintiffs-Appellees,

v

No. 354486
Saginaw Circuit Court
LC No. 18-038302-NI

DESHAWN HARRIS,

Defendant-Appellant.

Before: SHAPIRO, P.J., and JANSEN and BECKERING, JJ.

PER CURIAM.

In this interlocutory appeal, defendant Deshawn Harris, an officer with the Saginaw City Police Department, appeals as of right the trial court's order denying his motion for summary disposition on the basis of governmental immunity in a case involving a traffic accident in which defendant's patrol vehicle collided with the vehicle driven by plaintiff Mary LaTarte.[1] Because there are material questions of fact as to whether defendant acted with gross negligence and was the proximate cause of the accident, we affirm. However, we decline to address defendant's additional argument regarding whether plaintiff suffered a serious impairment of body function, as the issue is not appealable as of right and defendant did not file a corresponding application for leave to appeal.

---

[1] Barry LaTarte is Mary's husband. According to the complaint, Barry's claims concern loss of consortium as a result of Mary's injuries. As a result, we will refer to Mary as "plaintiff" in this opinion unless otherwise noted.

# I. FACTS AND PROCEDURAL HISTORY

This case arises out of a traffic accident that occurred in Saginaw, Michigan, on December 23, 2016. Defendant and his district partner, Officer Samantha Booth,[2] were parked in the Thompson Middle School parking lot in separate patrol cars. At approximately 11:00 a.m., dispatch reported a call for a person experiencing acute undifferentiated agitation (AUA). Defendant explained in his deposition that this designation meant that someone may have threatened to commit suicide. Defendant and Officer Booth both responded to the call, with defendant following Officer Booth in his patrol car. Defendant drove eastbound on Court Street toward the bridge that crosses the Saginaw River. Neither defendant nor Officer Booth activated either their lights or their sirens. Both were speeding. Defendant could not recall the specific location of the emergency, but he testified that it was on the east side of the city, which required the officers to cross the river. At the same time, plaintiff was driving home from a shopping trip. She drove westbound on Court Street and planned to turn left onto Woodbridge Street. The light was green for traffic traveling on Court Street. Officer Booth drove through the intersection of Court Street and Woodbridge Street without incident. Plaintiff testified that when she approached the turn lane, she did not turn right away. She then proceeded to make a lefthand turn because "the traffic—I saw some traffic coming but it appeared to be plenty way away for me to make the lefthand turn." As plaintiff attempted to turn, defendant's patrol car entered the intersection and struck the rear corner panel of her vehicle.

A subsequent analysis of the event data recorder in defendant's patrol car showed that he was traveling 83 miles per hour five seconds before the accident. The speed limit on Court street was either 30 or 35 miles per hour.[3] Defendant engaged the brakes two seconds before the accident. Defendant testified that when he knew he was going to collide with plaintiff's vehicle, he attempted to move his patrol car into the left turn lane; however, he lost traction and was unable to avoid hitting plaintiff's car. Plaintiff testified that she never saw the vehicle that hit her. Defendant explained that he decided not to turn on his patrol car's lights or siren because he did not want to alert his approach to the person experiencing agitation. Defendant acknowledged that he could activate his patrol car's lights without using the siren. Video footage taken from a nearby surveillance video, Booth's dashcam video, and defendant's own body camera provide additional evidence, including that defendant was driving a black patrol car, the day was overcast such that his car may have blended into the horizon, he may not have had his headlights on, the pavement

---

[2] The parties spell Officer Samantha's last name as both "Booth" and "Buth" in the lower court filings. We will refer to her as "Officer Booth" for the purposes of this opinion. The facts are gleaned from the evidence produced by the parties in relation to defendant's motion for summary disposition.

[3] There is a discrepancy in the record concerning the speed limit in the area in which the accident occurred. Plaintiff asserts that the speed limit is 30 miles per hour in her lower court filings. Plaintiff's accident reconstructionist indicates in his report that the speed limit is 35 miles per hour. The trial court, in its written opinion and order, states that the speed limit is either 30 or 35 miles per hour.

was wet, snow was piled on the sides of the road, and Court Street was busy at the time of the accident.

Plaintiff sustained, among other injuries, a fractured tibia, requiring her to be hospitalized for three days and sent home in a full-leg splint immobilizer with several months of non-weightbearing requirements. She testified regarding the impact the injury had on her following the accident and the problems she continues to experience. She initiated this lawsuit against defendant, alleging that he acted with ordinary and gross negligence by driving through a busy intersection at a high rate of speed without activating either his police lights or a siren. She further asserted that his conduct was the proximate cause of her injuries, and that she suffered a serious impairment of body function.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(7) (governmental immunity), (C)(8) (failure to state a claim on which relief can be granted), and (C)(10) (no genuine issue of material fact). He claimed entitlement to governmental immunity pursuant to the governmental tort liability act (GTLA), MCL 692.1401 *et seq*. With respect to any claim of ordinary negligence, defendant explained that plaintiff did not sue his employer, so any claim of liability for ordinary negligence should have been dismissed. As for whether he was grossly negligent, defendant argued that his actions were appropriate under the circumstances because a "silent run" was necessary to prevent escalating an individual whom he believed to be attempting to commit suicide. As for proximate cause, defendant contended that plaintiff's failure to yield to oncoming traffic was the most immediate, direct, and efficient proximate cause of the accident. Finally, he asserted that plaintiff had not met the threshold for a serious impairment because she made a swift recovery and resumed her pre-accident daily living activities. Plaintiff opposed defendant's motion for summary disposition and moved for summary disposition in her favor pursuant to MCR 2.116(I)(2) on the serious impairment issue. In a thorough and well-reasoned opinion and order, the trial court denied both parties' motions. Defendant's appeal followed.

## II. ANALYSIS

### A. GOVERNMENTAL IMMUNITY

Defendant argues that the trial court erred by denying his motion for summary disposition on the basis of governmental immunity. We disagree.

"Challenges to the trial court's decision on a motion for summary disposition are reviewed de novo." *Wood v Detroit*, 323 Mich App 416, 419; 917 NW2d 709 (2018). Moreover, "the applicability of governmental immunity is a question of law that this Court reviews de novo." *Id*. (quotation marks and citation omitted). "The proper interpretation and application of a statute is also reviewed de novo." *Id*. "In reviewing a motion under MCR 2.116(C)(7), a court is required to consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties." *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). The documentary evidence must "be considered in the light most favorable to the nonmoving party." *Id*.

Pursuant to MCL 691.1407(1), a governmental agency is generally immune from tort liability if the agency is engaged in the exercise of a governmental function. With respect to the liability of officers and employees of governmental agencies, MCL 691.1407(2) provides:

Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

In this case, it is undisputed that defendant, a police officer for the city of Saginaw, was acting within the scope of his authority in the exercise of a governmental function. At issue is whether his conduct constituted gross negligence that was the proximate cause of plaintiff's injuries. Defendant bears the burden of proof to raise and establish that he is entitled to governmental immunity as an affirmative defense. *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008).

1. Gross Negligence

MCL 691.1407(8)(a) defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." "Evidence of ordinary negligence is not enough to establish a material question of fact regarding whether a government employee was grossly negligent." *Wood*, 323 Mich App at 423-424 (quotation marks and citation omitted). Gross negligence suggests "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Id*. at 424. "Although questions regarding whether a governmental employee's conduct constituted gross negligence are generally questions of fact for the jury, if reasonable minds could not differ, summary disposition may be granted." *Id*.

In this case, the evidence shows that defendant was traveling well over twice the posted speed limit through a busy intersection without lights or sirens two days before Christmas. Driving 83 miles per hour when approaching the intersection, and depending on whether the speed limit was 30 or 35 miles per hour, defendant was traveling up to 53 miles per hour *over* the speed limit, which by any measure is dangerously fast. It was an overcast day, defendant's car was black, he may not have had his headlights on, and the pavement appears wet, which are factors that would

have impacted the visibility of his car, an unsuspecting motorist's ability to appreciate the speed of his approach, and his ability to react under the circumstances. Defendant acknowledged in his deposition that his attempt to avoid hitting plaintiff's vehicle was unsuccessful because he lost traction. Moreover, the call to which he was responding was across the river and at least a mile away, and as plaintiff points out, defendant could have activated at least his emergency response lights until he arrived closer to the scene of the call so as not to unnecessarily endanger others en route. A reasonable jury could conclude that defendant's actions under these circumstances demonstrated "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Id*. As a result, reasonable minds could differ in regard to whether defendant acted with gross negligence, and summary disposition was properly denied on this ground. See *id*.

Citing to MCL 257.603 and MCL 257.632, defendant contends that his decision to respond to an emergency call concerning a suicidal individual without emergency lights or sirens was legally excused because he did not want to alert the individual of his approach. MCL 257.603 provides that, subject to certain conditions, "the driver of an authorized emergency vehicle when responding to an emergency call" may exceed "the prima facie speed limits *so long as he or she does not endanger life or property*." (Emphasis added). MCL 257.603(2) and (3)(c). But such allowance only applies "when the driver of the vehicle while in motion sounds an audible signal by bell, siren, air horn, or exhaust whistle as may be reasonably necessary except as provided in subsection (5), and when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating, or rotating red or blue light . . . ." MCL 257.604(4). According to MCL 257.603(5), "[a] police vehicle shall retain the exemptions granted in this section to an authorized emergency vehicle without sounding an audible signal if the police vehicle is engaged in an emergency run in which silence is required." However, the subsection does not provide an exception for the use of lights, and defendant had the ability to activate his patrol car's lights without using the siren.

MCL 257.632 states:

> The speed limitation set forth in this chapter shall not apply to vehicles when operated with due regard for safety under the direction of the police when traveling in emergencies or in the chase or apprehension of violators of the law or of persons charged with or suspected of a violation, nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, nor to public or private ambulances when traveling in emergencies. This exemption shall apply only when the driver of the vehicle while in motion sounds an audible signal by bell, siren or exhaust whistle as may be reasonably necessary or when the vehicle is equipped with at least 1 lighted lamp displaying a flashing, oscillating or rotating red or blue light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicles, unless the nature of the mission requires that a law enforcement officer travel without giving warning to suspected law violators. *This exemption shall not however protect the driver of the vehicle from the consequences of a reckless disregard of the safety of others.* [Emphasis added.]

Defendant's argument that his conduct was excused by statute is without merit. As noted, MCL 257.603(2)(c) states that an emergency responder may exceed the speed limit as long as he "does not endanger life or property" and MCL 257.632 does not protect a driver "from the

consequences of a reckless disregard of the safety of others." In other words, a police officer may exceed the speed limit and travel without sirens while responding to an emergency call; however, the officer still owes a duty of care to other drivers and pedestrians. See also *Robinson v Detroit*, 462 Mich 439, 451; 613 NW2d 307 (2000) (stating that "the police owe a duty to innocent persons whether those persons are inside or outside the vehicle"). As a result, the trial court properly concluded that defendant is not entitled to summary disposition on the basis of MCL 257.603 and MCL 257.632.[4]

## 2. Proximate Cause

Defendant argues that he was not the proximate cause of plaintiff's injuries because plaintiff was at fault for the accident by failing to yield to him when making a left-hand turn. See MCL 691.1407(2)(c). This Court recently addressed the proper framework to determine whether a governmental actor's gross negligence was the proximate cause of the plaintiff's injuries. *Ray v Swager (On Remand)*, 321 Mich App 755, 759-760; 909 NW2d 917 (2017).

> Provided that a defendant's gross negligence was a factual cause, the court must then consider whether the defendant was a proximate—i.e., legal—cause by addressing foreseeability and whether the defendant may be held legally responsible for his or her conduct. In addition to considering the governmental actor's conduct, it must also be decided whether there are other proximate causes of the injury. Determining if there were other proximate causes requires consideration of whether any other human actor was negligent because only a human actor's breach of a duty can be a proximate cause. Nonhuman and natural forces may bear on the question of foreseeability and intervening causes for purposes of analyzing proximate cause, but they can never be considered the proximate cause of a plaintiff's injuries for purposes of the GTLA.

> Once the various proximate causes have been determined, the question then becomes whether, taking all possible proximate causes into account, the government actor's gross negligence was the proximate cause of injury. This requires considering defendant's actions alongside any other potential proximate causes to determine whether defendant's actions were, or could have been, the one most immediate, efficient, and direct cause of the injuries. The relevant inquiry is not whether the defendant's conduct was the immediate factual cause of injury, but whether, weighing the legal responsibilities of the actors involved, the government

---

[4] Citing to MCL 257.603 and MCL 257.632, defendant also asserts that the trial court erred in considering the issue of negligent operation of a motor vehicle under MCL 691.1405. According to MCL 691.1405, "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental, agency is owner…." We conclude that MCL 691.1405 is inapplicable to this case because plaintiff did not sue a governmental agency. Thus, ordinary negligence is not at issue. Rather, plaintiff is only entitled to a recovery against defendant if she can establish that his conduct was grossly negligent.

actor could be considered the proximate cause. [*Id*. at 760 (quotation marks and citation omitted).]

In *Ray (On Remand)*, the plaintiff was a high school student who was struck by a vehicle while he was running with his cross-country team. Defendant Eric Swager, the plaintiff's coach, was running with the team on the day of the accident. *Id*. at 758-759. Eyewitness accounts of the accident varied, but there was evidence that Swager told the team to cross the street at an intersection even though the pedestrian signal indicated that pedestrians should not cross. *Id*. The plaintiff, who was at the back of the group, ran into the road and was struck by a vehicle driven by Scott Platt. *Id*. This Court ultimately concluded that the factual disputes present in the case prevented it from determining whether the defendant was entitled to governmental immunity as a matter of law. *Id*. 760-761. The Court explained that there were disputes concerning the plaintiff's location relative to the other runners; whether the defendant's instruction applied to the plaintiff or even if the plaintiff heard the instruction to cross the street; and whether the plaintiff had a duty to independently evaluate the safety of the road before crossing and was negligent by simply relying on the defendant's instruction. *Id*. at 761-762. Moreover, the Court noted that there were also factual disputes concerning Platt's conduct, including a debate as to whether he accelerated as he approached the yellow traffic light even though there were several runners in the area. *Id*. at 762. In sum, this Court held that "given the myriad variables affecting the actors' respective negligence and legal responsibility, and in light of the factual disputes relating to these issues, we cannot conclude as a matter of law that Swager was not grossly negligent and that this gross negligence did not constitute the proximate cause of Ray's injuries." *Id*.

In the present case, defendant argues that plaintiff was the most immediate, efficient, and direct cause of her injuries because she failed to yield to him before making her turn. Specifically, he asserts that because Officer Booth passed plaintiff at a high rate of speed, a reasonably prudent person would have paused before turning. However, plaintiff testified in her deposition that she looked at incoming traffic and believed she had enough time to turn. Therefore, whether plaintiff should have been on notice that a second vehicle would be following Officer Booth at a high rate of speed is a factual dispute to be resolved by the jury. Moreover, as discussed, defendant was traveling 83 miles per hour in a black vehicle without lights or sirens on an overcast winter day. There is a factual question concerning whether plaintiff could see defendant's vehicle in time. See *id*. MCL 257.650(1) provides:

> The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to a vehicle approaching from the opposite direction which is within the intersection or so close to the intersection as to constitute an immediate hazard; but the driver, having so yielded and having given a signal when and as required by this chapter, may make the left turn and the drivers of all other vehicles approaching the intersection from the opposite direction shall yield the right of way to the vehicle making the left turn. At an intersection at which a traffic signal is located, a driver intending to make a left turn shall permit vehicles bound straight through in the opposite direction which are waiting a go signal to pass through the intersection before making the turn.

Additionally, according to MCL 259.649(7), "[t]he driver of a vehicle traveling at an unlawful speed forfeits a right of way that the driver might otherwise have. . . ." Similar to *Ray (On*

*Remand)*, 321 Mich App at 761-762, factual issues exist in regard to what constitutes "the one most immediate, efficient, and direct cause" of plaintiff's injuries. Accordingly, the trial court properly denied defendant's claim that he was entitled to governmental immunity based on proximate cause.

## B. SERIOUS IMPAIRMENT OF BODY FUNCTION

Finally, defendant claims that the trial court erred by denying his motion for summary disposition under MCR 2.116(C)(10) because plaintiff's injuries did not amount to a serious impairment of body function so as to satisfy MCL 500.3135[5] and enable her to file a third-party tort claim. As noted at the outset, we decline to address this issue because it is outside the scope of defendant's appeal of right.

Pursuant to MCR 7.203(A), this Court has jurisdiction of an appeal of right filed by an aggrieved party from a final judgment or order as defined in MCR 7.202(6). MCR 7.202(6)(a)(v) defines "an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116(C)(7) or an order denying a motion for summary disposition under MCR 2.116(C)(10) based on a claim of governmental immunity" as a final order. An appeal from an order described in MCR 7.202(6)(a)(v) "is limited to the portion of the order with respect to which there is an appeal of right." MCR 7.203(A)(1). Defendant's claim of entitlement to summary disposition with respect to whether plaintiff suffered a threshold injury does not pertain to governmental immunity, and thus, it is not within the scope of this appeal of right. See *Tyrell v University of Michigan*, __ Mich App __; ___ NW2d ___ (COA No. 349020, issued December 22, 2020) (citations omitted), slip op p. 5. If defendant wanted this Court to consider that portion of the trial court's order addressing whether plaintiff established a question of fact with respect to a serious impairment of body function, he should have filed an application for leave to appeal the issue under MCR 7.203(B)(1) and sought to have the appeals consolidated. Because he did not, this issue is outside the scope of his appeal of right. For the same reason, we decline to address plaintiff's contention that she was entitled to summary disposition in her favor on the issue.[6]

Affirmed.

/s/ Douglas B. Shapiro
/s/ Jane M. Beckering

---

[5] MCL 500.3135(1) provides that a "person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

[6] Because we would likely have declined an application for leave to appeal the issue by either party, we also decline to treat it as on leave granted.

-8-